O'Brien *vs.* Baltimore Belt Railroad Company.

(Decided 16th June, 1891.)

PATRICK O'BRIEN *vs.* THE BALTIMORE BELT RAIL-ROAD COMPANY.

*Railroad in a Tunnel through Streets—Open cuts—Rights of Abutting owner—Constitutional law—Injunction—Adequate remedy at Law.*

Under the Act of 1890, ch. 139, authorizing a railroad company to construct a railroad in a tunnel in the City of Baltimore, and empowering the Mayor and City Council, by ordinance, to designate the route of said railroad, and to prescribe the mode, terms and conditions of its construction, the Mayor and City Council may confer upon the company, by ordinance, power to construct any part of its road in the streets of the city by way of open cuts.

O'Brien *vs.* Baltimore Belt Railroad Company.

The depreciation of the property of an abutting owner on a street in consequence of the construction of a railroad along the street, which in no way interferes with access to the property, is not such taking of private property for public use as is forbidden by section 40 of Article 3 of the Constitution, except upon payment of just compensation being first made; and the owner who has no freehold or leasehold estate in the bed of the street, is not entitled to ask a Court of equity to restrain the construction of the railroad, inasmuch as section 169 of Article 23 of the Code, making railroad companies responsible for injuries done to private property by the laying down of their tracks on public streets, furnishes adequate remedy by action at law.

Appeal from the Circuit Court of Baltimore City.

This appeal was taken from the order of the Court below (Dennis, J.,) refusing the application of the plaintiff for a preliminary injunction. The case is stated in the opinion of this Court.

The cause was argued before Alvey, C. J., Robinson, Bryan, Fowler, McSherry, and Briscoe, J.

*Thomas R. Clendinen, George R. Willis,* and *Isidor Rayner*, for the appellant.

The right of the appellant as an abutting owner to the use of the street, and for access to and from his lot and house, is property within the meaning of section 40 of Article 3 of the Constitution—it was one of the things he paid for when buying the lot, and it will be taken from him by the appellee. The actual results are practically the same, whether an abutting owner owns the fee, or whether it is in the city, or some other person. The abutting owner has precisely the same privileges, rights and advantages in either instance in and to the ground, while it remains a street, and it is because the street is destroyed and taken away that his property in the street is taken. Even if he owned the entire bed of the street, he would not be more injured than now, because it would

O'Brien *vs.* Baltimore Belt Railroad Company.

be then as it is now, the destruction of the street as a street; which took away his property, and not the fact that a railroad acquired an easement upon the fee, except so far as that easement or servitude destroyed the street, and deprived him of his property rights therein.

An injunction is a proper remedy. *Roman vs. Strauss*, 10 *Md.*, 98; *Western Md. Railroad Co., et al. as. Owings*, 15 *Md.*, 199, 204; *Mayor, &c. of Baltimore vs. Gill*, 31 *Md.*, 376; *Shipley vs. Balto. & Potomac R. R.*, 34 *Md.*, 336; *Baltimore & Ohio R. R. Co. vs. Strauss*, 37 *Md.*, 237 and 241; *New Central Coal Co. vs. George's Creek Coal and Iron Co.*, 37 *Md.*, 537; *Pumphrey vs. Mayor & C. C. of Baltimore*, 47 *Md.*, 153, 154; *Piedmont & Cumberland Railway Co. vs. Speelman*, 67 *Md.*, 260; *Pratt vs. Buffalo City R. R.*, 19 *Hun*, 30; *Abendorth vs. N. Y. &c. R. R.*, 54 *N. Y. Sup.*, 417; *People vs. Vanderbilt*, 26 *N. Y.*, 287; *People vs. Vanderbilt*, 28 *N. Y.*, 396; *Henderson vs. N. Y. C. R. R.*, 78 *N. Y.*, 423; *Williams vs. N. Y. C. R. R.*, 16 *N. Y.*, 97, 109; *Dillon on Mun. Corp.*, 661; *Union Pacific R. R. vs. Hall*, 91 *U. S.*, 355; *Kanavagh vs. Mobile and Girard R. R.*, 78 *Ga.*, 271; *Columbus & Western Railway Co. vs. Witherow*, 82 *Ala.*, 190; *Foster's Federal Practice*, sec. 215, *p.* 309, &c.; *Northern Pacific R. R. Co., vs. Burlington & Missouri R. R. Co.*, 2 *McCarthy*, 203, &c.; *Missouri, Kansas & Texas R. vs. Texas & St. Louis Rw. Co.*, 10 *Fed. Rep.*, 497, &c.

Not only has no such right to the use of a street as is now claimed been heretofore allowed in Maryland, but the right to use a *steam* railroad upon a street has never been allowed, and the question is undecided, with the indication that such a road would be considered an additional servitude, easement or burden, because inconsistent with the ordinary and reasonable use of a street, while the use by a horse railroad is decided not inconsistent, because not permanent or exclusive. *Hiss and Wife, et al. vs. Baltimore and Hampden Pass. Railway Co.*, 52 *Md.*,

251; *Hodges vs. Baltimore Passenger Railway Co.*, 58 *Md.*, 603; *Baltimore & Ohio R. R. Co. vs. Boyd, et al.*, 63 *Md.*, 325, 332.

And the reason or rule seems to be general or universal that where the use of a steam railroad would be permanent and exclusive, it will not be allowed without condemnation or compensation, because it would be inconsistent with the ordinary use of a street, while the use of the surface of a street by a horse railroad may not be inconsistent, because, or so long as, it does not permanently and exclusively occupy it so as to prevent the ordinary use of the street.

The right of an abutting owner to use the street is property which is taken within the meaning of the Constitution, by the grant of such privileges as are claimed by the defendant, and the injury and the right to a remedy is the same whether the abutting owner owns the fee of the street or not, and cannot be taken without compensation. *I. M. & I. R. R. Co. vs. Esterle*, 13 *Bush*, 668, 674; *Lackland vs. N. Mo. R. R.*, 31 *Mo.*, 181, 187; *C. B. U. P. R. R. Co. vs. Twine*, 23 *Kan.*, 585, 589; *C. B. U. P. R. R. Co. vs. Andrews*, 30 *Kan.* 590, 594, 595; *Theobold vs. L. N. O. & T. R. R. Co.* 66 *Miss.*, 279, 284, 285, 287, 288; *B. & M. R. R. Co. vs. Reinhackle*, 15 *Neb.*, 279, 281, 282; *Haynes, &c. vs. Thomas*, 7 *Ind.*, 38, 43; *Town of Rensselaer vs. Leopold*, 106 *Ind.*, 29, 31; *Crawford vs. Village of Delaware*, 7 *Ohio St.*, 460; *Street Railway vs. Cumminsville*, 14 *Ohio St.*, 524.

In New York it has repeatedly been decided that the interest of an abutting owner was property, and that it was a taking when the use was permanent, &c. *Abendorth vs. N. Y. R. Co.*, 54 *N. Y. Sup.*, 417; *Story vs. N. Y. Elevated R. R. Co.*, 90 *N. Y.*, 122; *Lahr vs. Metropolitan R. R. Co.*, 104 *N. Y.*, 268; *Abendorth vs. Manhattan Railway Co. et al.*, 122 *N. Y.*, 1; *Kane vs. New York Elevated R. R. Co.*, 125 *N. Y.*, 164; *Grand Rapids &*

O'Brien *vs.* Baltimore Belt Railroad Company.

*Ind. R. Co. vs. Heisel*, 38 *Mich.*, 62; *Stone vs. Fairbury, Pontiac & N. W. R. R. Co.*, 68 *Ill.*, 394; *Adams vs. Chicago, Burlington & Northern R. Co.*, 39 *Minn.*, 286, 289, 290, 291, 292, 293, &c.; *Lamm vs. Chicago, St. P., M. & O. R. Co.*, 47 *N. W. Rep.*, 455; *Pumpelly vs. Green Bay Co.*, 13 *Wall.*, 166.

The authorities cited show, we think, that the right of an abutting owner to the use of the street upon which his premises are located, is one of the most valuable elements of his property, and is not only property within the proper meaning of the constitutional provision, but is a right which, unless it is protected, and if it is lost, would render his lot utterly valueless.   It seems also to follow, necessarily and logically, that to deprive him of such a right, by making an open cut in the street, so that he can by no possibility ever use it again, is to take it away from him in the most absolute sense, and especially is this so in view of the fact that this Court said in *Mayor &c. of Baltimore vs. Appold*, 42 *Md.*, 442, in effect, if the appellant was entitled to do as it claimed, every one could do the same thing.

The defendant has no right at all to build and maintain a permanent *open cut* in the City of Baltimore.   The Legislature gave the Mayor and City Council the power to provide by ordinance·for the building of a *tunnel*, and there is nothing in the Act of Assembly, expressly or inferentially, that gives the right to the defendant to take away one-half of Howard street for the purpose of an *open cut* which will permanently destroy the use of the street *pro tanto*, while a tunnel would not destroy its use at all as a street, but would only temporarily interfere with the travel over it during its construction.   The Mayor and City Council have no power permanently to deprive the abutting owners of the use of a street without legislative authority, and you look to this Act in vain for any authority to do anything else, than to tunnel underneath the street.

An *open cut* is one thing, and a tunnel is another, and the right to tunnel does not by the remotest implication carry with it the right to maintain an open cut in the bed of the street four squares before you get to the tunnel. If this were otherwise, the city could, under this same Act, for the benefit of this road, close the principal thoroughfares in the city, and abutting owners would have no redress.

*Hugh L. Bond, Jr.,* and *John K. Cowen,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The Court below passed its order refusing the injunction upon consideration of the allegations of the bill and the exhibits filed therewith, without reference to the answer of the defendant, which had been previously filed. The answer was properly before the Court, and the defendant was entitled to have it considered, if material, in determining the question whether the injunction should issue. *Lynn vs. Mt. Savage Iron Co.,* 34 *Md.,* 624; *Adams' Doct. Eq.,* 356, *and notes.* We entirely agree, however, with the learned Judge below, that, without regard to the answer, the bill fails to present a case for an injunction.

The plaintiff is the owner of a lot of ground, with improvements thereon, situate on the east side of Howard street, between Camden and Lee streets, and conducts there the business of a livery stable. Howard street at this place, is eighty-two and a half feet wide; and the plaintiff is only an abutting proprietor on the street, with no estate in the bed thereof; but as abutting owner of property on the east side of the street he claims to be entitled to the full, free and unobstructed use of the entire width of the street, as one of the public highways of the city.

O'Brien *vs.* Baltimore Belt Railroad Company.

The defendant company was incorporated under the general railroad incorporation law of the State, for the purpose of constructing and operating a railroad through parts of Baltimore City and parts of Baltimore County; and finding it necessary to tunnel a part of the way through the city, the company applied to the General Assembly of 1890 for authority to construct such tunnel, and that authority was given by the Act of 1890, ch. 139. By the first section of that Act it is provided that the company "shall be authorized to construct its railroad, or any part thereof, in such tunnel, under such ordinance or ordinances, as may be passed by the Mayor and City Council of Baltimore, relating to the route of said railroad through the City of Baltimore, and the *mode, terms and conditions of the building and construction* of said railroad within said city." Immediately after the passage of this Act, the Mayor and City Council of Baltimore, by special ordinance, designated the route of the road, and made elaborate provisions in regard to the mode, terms and conditions of the construction of the road through the city. By the first section of the ordinance is defined the route of the road; and, as it affects Howard street, it is provided that it shall run from a certain point "in a northerly direction to the western side of Howard street, between Montgomery and Lee streets; thence along, in, and occupying the western route half of Howard street, parallel with the eastern line of said street, and distant therefrom forty feet, measured from said eastern building line to the eastern limit of said railroad, to the south line of Camden street; said railroad, from where it intersects the west line of Howard street to its intersection with the south line of Camden street, to be depressed within a wall cut; thence along and under Howard street by a tunnel to the northerly side of Richmond street; thence," &c. And in a *proviso* to the same section of the

ordinance it is required "that all open cuts in any street, lane or alley in this city, authorized to be built under the provisions of this ordinance, shall be protected on both sides by a granite coping at least two feet high, with neat iron rail on top."

The plaintiff charges in his bill that the defendant company intends to proceed forthwith in the construction of its roadway, and to dig up the west half of the bed of Howard street, in front of his property on the east side of that street, to a depth of from ten to twenty-four feet below the present surface of the street. That said plan is known as an open cut, and that when said open cut is made, Howard street, between Lee and Camden streets, will be forever destroyed as a public highway, to the extent of said open cut, and will be devoted, to that extent, to the exclusive use of the railroad company. The plaintiff denies the authority of the Mayor and City Council to grant to the railroad company any such exclusive right to the use of the streets of the city; and insists that such use will create a new and additional servitude on the bed of the street, which the Mayor and Council have no right to impose; but even if such new and additional servitude be rightfully imposed, it is insisted that the use of the bed of the street can only be availed of by the railroad company, upon paying to the abutting lot owners just compensation for such use. The plaintiff further charges that no condemnation proceedings have been taken, and none are contemplated; nor is it contemplated by the railroad company that any compensation whatever shall be made to the plaintiff or other abutting lot owners who will be affected by this open cut in the bed of the street. He therefore charges that if the defendant company is allowed to proceed in the manner it proposes, without first making just compensation, it will be in violation of section 40 of the 3rd Article of the Constitution of this

O'Brien *vs.* Baltimore Belt Railroad Company.

State, and also in violation of the 14th Amendment of the Constitution of the United States. And he therefore prays that the defendant may be enjoined in the use of the street until just compensation is made, for what he alleges will be a serious injury to his property.

It is not charged or in any way claimed that the plaintiff will be deprived of or seriously hindered in the right of access to his property from the street, by the making of the cut. Nor is it alleged or shown that the foundations of the plaintiff's buildings, abutting on the street, will be in any manner undermined or impaired by the cut proposed to be made in the street. The street, after the cut is made, will still remain, in front of the plaintiff's property on the east side of the cut, about forty-one feet wide. There is no question, therefore, presented here as to the right of the plaintiff to compensation for obstructing access to his property from the street; nor is there any pretence that there will be any physical invasion of his private property abutting on the street. The foundation of the right to relief asserted by the plaintiff is the fact that he is an abutting owner of property on the street, and the making of the open cut will deprive him of the use of that part of the street, as at present enjoyed by him.

1. The first contention urged on behalf of the plaintiff is, that the Act of the General Assembly of 1890, ch. 139, in conferring special authority upon the defendant company to construct its railroad in a tunnel within the limits of the city, did not confer authority to construct any part of such road by way of open cuts in the streets; and that the Mayor and City Council exceeded their authority in attempting to confer power upon the company, by ordinance, to construct any part of its road in the streets of the city, by way of open cuts. But if we recur to the terms of the grant of power by the Legislature to the Mayor and City Council, it will at once appear that the power

granted was ample to justify the ordinance that was passed. The Mayor and City Council were authorized to designate by ordinance the route of the road, and also to prescribe the *mode*, terms and conditions of its construction. The right to prescribe the mode and conditions of its constrution, certainly embraced the power to authorize, by ordinance, the making of any part of the road by open cuts, if found to be proper and necessary in the construction of 'the road on the route designated. But apart from the special terms of the statute, the company was authorized to construct such part of its road in a tunnel as should be found necessary; and the grant of that power carried with it, by reasonable implication, all that is necessary and proper for the exercise of the power. Properly graded approaches are indispensable to the use of a tunnel as part of a railroad, and therefore the power to make such approaches must exist. In *Transportation Co. vs. City of Chicago*, 99 *U. S.*, 640, the Supreme Court of the United States said that the grant of power by the Legislature to build a bridge or construct a tunnel, carried with it, of course, all that was necessary for the exercise of the power. And in the case of *Dodge vs. The County Commissioners of Essex*, 3 *Metc.*, 380, Ch. Justice SHAW laid down the principle as being unquestionable, that "an authority to construct any public work carries with it an authority to use the appropriate means. An authority to make a railroad is an authority to reduce the line of the road to a level, and for that purpose to make cuts, as well through ledges of rock as through banks of earth." It is plain therefore that there is no foundation for this first contention of the plaintiff.

2. The next question, and that which is the principal question of the case, is, whether the plaintiff, being only an abutting owner on the east side of Howard street, with no freehold or leasehold estate in the bed of the

O'Brien *vs.* Baltimore Belt Railroad Company.

street, has such an interest therein, by reason of his abutting proprietorship, as to entitle him to be compensated therefor, by the railroad company, before using the street; such compensation to be ascertained and rendered in the manner and according to the provision of the 40th section of the 30th Article of the Constitution of this State? Or, to state the question in a more concise form, whether the use of the street by the railroad company, in the manner proposed, and under the conditions stated, would be such *taking of the private property* of the plaintiff as is forbidden by the Constitution of this State, except upon payment of just compensation first being made.

The Constitution of this State (sec. 40, Art. 3,) declares, that the Legislature shall enact no law authorizing private property to be taken for public use, without just compensation, to be agreed upon by the parties or awarded by a jury, being *first* paid, or tendered to the party entitled to such compensation. As will be observed, this constitutional provision does not profess to declare what rights shall be regarded as property; but the thing of which the party is deprived must be private property, and it must be taken for a public use. Nor does the Constitution declare what shall constitute a *taking* within the meaning of the inhibition. These are questions of definition left to be fixed by a just construction of the terms employed.

There would seem to be no question of the right and power of the Legislature of the State, through the agency of the municipal government, to change and alter the grades of existing streets from time to time, and as often as may be deemed proper, without liability being incurred by the agents doing the work, to the abutting owners of property, for the *mere consequential* damage that may be suffered by reason of the changed condition of the streets. In many cases the damage suffered from

such changes in the grades of streets is very serious,
and may even considerably affect the value of property;
but yet, if the work be done with due care to avoid un-
necessary injury to the abutting property, and there be
no physical invasion thereof, the damage suffered is
without remedy.   In such cases, the work having been
done by legal authority and for municipal purposes, it is
said the private damage and annoyance occasioned
thereby must be suffered in order to advance the public
good.   *Baltimore & Potomac R. R. Co. vs. Reaney*, 42
*Md.*, 117; *Mayor, &c. of Cumberland vs. Willison*, 50
*Md.*, 138; *Transportation Co. vs. City of Chicago*, 99 *U.
S.*, 635; *Vanderlip vs. City of Grand Rapids*, 73 *Mich.*,
522; 2 *Dillon, Municip. Corp.*, (3rd Ed.) sections 989, 990;
*Cooley, Const. Lim.*, (6th Ed.) pages 666, 667 and 668.
But this reasoning, applicable to the case of the change
of grades and the improvement of streets for municipal
purposes, does not apply in the case of the grant of
power to change the grade of and occupy the street with
steam railroad tracks, by a railroad company, having no
connection with the municipal government.   In such
case, a different principle applies, and the rights of indi-
vidual property owners are in no respect subordinated to
the rights of the railroad company.   While the right in
the State to grant the power to a railroad company to
occupy the street is unquestionable, by virtue of its
power to control all the public highways of the State,
the adjoining lot owners are not without redress for any
substantial injury sustained to their property rights,
that may be produced by reason of the construction
or operation of the railroad in the street.   As said
by the Supreme Court of the United States, in *Balto. &
Potomac R. R. Co. vs. Fifth Bap. Church*, 108 *U. S.*,
317, 331, when speaking of legislative authority to a
railroad company to bring its tracks within the muni-
cipal limits of Washington City—"Grants of privileges

O'Brien *vs.* Baltimore Belt Railroad Company.

or powers to corporate bodies, like those in question, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion. The great principle of the common law, which is equally the teaching of Christian morality, so to use one's property as not to injure others, forbids any other application or use of the rights and powers conferred."

But, notwithstanding the railroad company may be liable on common law principles, the question still remains to be answered, will the cutting and use of the street, as proposed by the railroad company, be the *taking* of private property, in respect of the rights of the plaintiff as abutting lot owner, within the meaning of the Constitution? As already stated, it is not charged that there will be any invasion of or physical interference with any part of the plaintiff's lot, in the construction of the road. The most that he claims for is that he will be deprived of the full use of the street, as it now exists, and that his property will be depreciated in value, by the construction of the road. This, however, is but an injury, to whatever extent it may be suffered, *of an incidental or consequential nature.* The construction of the railroad being authorized by competent authority, it cannot be treated as a public nuisance, and no right of action can arise against the company before it is known whether, and to what extent, damage may be sustained by the construction of the road in the bed of the street. In such case as this, therefore, it would seem to be clear, both upon principle and authority, that there is no such taking of private property for public use as is contemplated by the Constitution of the State; and hence there is no ground for any preliminary proceeding by way of condemnation. *Grand Rapid & Ind. R. R. Co. vs. Heisel,* 38 *Mich.*, 62; *Cooley, Const. Lim.,* (*6th Ed.*) *chap.* 15, *pages* 666 *to* 681, and the cases there collated; *Elliott on Roads and Streets,* 155 *to* 162.

The counsel for the plaintiff have strongly pressed upon the Court the propriety of adopting and following the principles applied in the *Elevated Railroad Cases*, decided by the Court of Appeals of New York. But without saying whether those decisions should be accepted or not, in like cases occurring here, this case does not call for the application or rejection of the doctrine applied in those cases. The doctrine of the *Elevated Railroad Cases* of New York, as summarized by the Supreme Court of the United States, in the recent case of *N. Y. Elevated R. Co. vs. Fifth Nat. Bank*, 135 *U. S.*, 440, is this: "An elevated railroad erected in and over a street pursuant to the statutes of the State, and with due compensation to the owners of property taken for the purpose, is a lawful structure. The owners of land abutting on a street have an easement of way, and of light and air, over it; and, through a bill in equity for an injunction, may, recover of the elevated railroad company full compensation for the permanent injury to this easement; but in an action at law, cannot, without the defendant's acquiescence, recover permanent damages, measured by the diminution in value of their property, but can recover such temporary damages only as they have sustained to the time of commencing the action." It thus appears that the exercise of equity jurisdiction in those cases was founded largely upon the inadequate remedy at law as administered in the Courts of New York. But here there is no such ground for equitable interposition; the laws of this State furnishing adequate remedy by action at law for any injury that may be suffered by the plaintiff.

There can be no question as to the power of the Legislature of the State, in providing for the construction of the railroad of the defendant through the city, to require compensation to be made to persons whose property may be injuriously affected by changes made in the grades of the streets, or by any other appropriation of

O'Brien *vs.* Baltimore Belt Railroad Company.

them, though the property affected may not be taken, within the meaning of the Constitution. Hence the Act of 1890, ch. 139, authorized the Mayor and City Council of Baltimore, by ordinance, to designate the route, and to prescribe the mode, terms and conditions of the construction of the road within the city. And by the special ordinance, passed in pursuance of the statute, among the terms and conditions prescribed, in the second section thereof, it is provided, that "the said company shall also pay and be liable for the *actual* damage sustained by any and all property abutting on that part of any square, street, lane, or alley, of which the grade shall be so changed, by reason of any such change of grade in any of the squares, streets, lanes or alleys of the city, occasioned by the construction of said railroad;—said damages to be recovered in the same manner as provided by section 169, Article 23 of the Code." And again, by section 12 of the ordinance, section 169, of Article 23 of the Code "is thereby expressly declared to be applicable to the building of said railroad, *for the injuries done to private property by the location and construction of said railroad,*" &c. Section 169 of Article 23 of the Code referred to (codified from the Act of 1876,) declares "that every railroad company laying down its track or tracks upon any such public street, road, alley or other public ground, shall be responsible for injuries done to private property by such location, lying upon or near to such public ground, which may be recovered by civil action brought by the owner or owners at any time within two years from the completion of such track or tracks, before the proper Court." By the acceptance of the Act of 1890, ch. 139, and the ordinance passed thereunder, the railroad company became bound by the terms and provisions thereof; and the legal remedy thus provided would seem to be ample to protect the plaintiff in his rights, though his case be not within the provision of the Con-

stitution, and that is made so, even  if he  were  without
remedy by the common law.

For the reasons assigned this Court is of  opinion  that
the order of the Court below should be affirmed, and that
the bill be  dismissed.

*Order affirmed, and*
*bill dismissed.*

(Decided 17th June, 1891.)

BRYAN, J., dissented.