ROBERT GARRETT *vs.* LAKE ROLAND ELEVATED RAIL-
WAY COMPANY.

*Elevated railway on Streets—Taking private Property for
Public use—Injunction—Public nuisance.*

The erection in the centre of a street of a stone abutment to
carry the iron superstructure, and to serve as an approach to
the elevated railroad, is not a taking of the property of an
abutting land owner, within the meaning of section 40 of Ar-
ticle 3 of the Constitution, which prohibits the taking of pri-
vate property for public use without compensation " being first
paid or tendered," so as to justify an injunction to restrain the
completion of the abutment until the land owner is paid for
the injury.

The abutment and elevated structure having been built by a cor-
poration, authorized to do so by an ordinance of the Mayor and
City Council of Baltimore, which was ratified and confirmed by
an Act of the Legislature, are not a public nuisance.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The de-
cree from which this appeal was taken, was signed by
Judge DENNIS.

The cause was argued before BRYAN, FOWLER, PAGE,
ROBERTS, BOYD and BRISCOE, J., and was reargued be-
fore ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS,
MCSHERRY, BOYD and BRISCOE, J.

*E. J. D. Cross,* and *John K. Cowen,* (with whom was
*William F. Frick,* on the brief,) for the appellant.

*John N. Steele,* and *Francis K. Carey,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

This case was argued during the last October term, and then, by direction of the Court, it was reargued at the present April term. Upon both occasions the discussions at the bar displayed great research and signal ability, and the briefs show unusual care, skill and thoroughness in their preparation. After several consultations a majority of us have reached the conclusions, which, having first briefly stated the material facts, we will proceed to announce.

The appeal is from a decree dismissing the appellant's bill of complaint, filed by him in the Circuit Court of Baltimore City, against the Lake Roland Elevated Railway Company. The record shows that Mr. Garrett is the owner of certain unimproved lots situated on and bounded by the west side of North street, and fronting four hundred and thirty-six feet thereon, and lying between the north side of Eager street and the south side of Chase street in Baltimore city. He also owns other lots likewise fronting on the west side of North street between Chase and Biddle streets; but with these we are not now concerned. North street is sixty feet wide between the building lines, and thirty-six feet between the curbs; and no part of it is included within the outlines of Mr. Garrett's deed. By *sec.* 5 *of Ordinance No.* 23, approved April the eighth, 1891, the North Avenue Railway Company, one of the several roads by the consolidation of which the Lake Roland Elevated Railway Company was formed, was authorized to bridge the Northern Central Railway Company's tracks on North street by means of an elevated structure extending, including the necessary approaches thereto, along North street from the corner of that and Eager streets to the corner of North and Saratoga streets. A stone abutment, forming an inclined plane, to carry on its perpendicular or highest side the iron superstructure, and to serve, on its surface, as the

northern approach to the elevated road, has been erected
nearly in the centre of North street, between Chase and
Eager, directly in front of part of the first named lots of
Mr. Garrett. It is eighty-three feet and two and a half
inches in length, and fifteen and eight-tenths feet in width,
and starts at the street grade, and gradually rises to a
height of nine feet, and leaving a distance or driveway
between its western face and the curb line contiguous to
Mr. Garrett's property, of nine feet and eight and a quar-
ter inches. It is alleged that the construction of this
abutment of solid masonry in the bed of North street and
the elevated structure, will, by reducing the width of the
street in front of the appellant's lots to less than ten feet,
destroy the access to his property from North street and
prevent him from reaching the same with vehicles ordin-
arily used in Baltimore. It is charged that the destruc-
tion of his right of access to his property as aforesaid ren-
ders such property entirely unsalable, and deprives him
of the market value thereof, and constitutes in fact and
in law a *taking* of his property without making compensa-
tion therefor, as required by the Constitution of the State
of Maryland. It is further claimed that this structure
deprives the premises of light and air, and that this, too,
is a taking of the property within the prohibition of the
Constitution. It is averred that the Mayor and City Coun-
cil of Baltimore, and the General Assembly of the State
had no power to authorize the construction of the said
abutment or to permit the operation of the road thereon,
because these acts create a new and additional servitude
upon the street and upon the appellant as an abutter
thereon, and are a nuisance. It is likewise insisted that
ordinance No. 23 and the *Act of Assembly of* 1892, *ch.*
112, confirming that ordinance, are in conflict with *sec.*
40 *of Art.* 3 of the Constitution, and void. The bill prays
for an injunction to restrain the completion of the abut-
ment, and a mandatory injunction requiring the appellee

to demolish and remove so much of it as had then been built. The appellee answered the bill, and considerable evidence was taken.

The proposition distinctly presented by the record, and earnestly contended for by the appellant's distinguished counsel is, that the erection by the appellee of this abutment on property not owned by the appellant, but in the bed of a public city thoroughfare upon which his lots abut, destroys the access to his land, interferes with light and air, imposes a new and additional servitude upon his property, and deprives him of the benefit of the use of the same; and amounts in law to a *taking* of his property, that is in fact not trespassed upon or touched, and is illegal until compensation shall have been first made therefor. Though there has been no physical invasion of the appellant's property, still if the act complained of constitutes, *by reason of its consequences, a taking* of the appellant's private property for a public use, within the meaning of *sec. 40 of Art. 3* of the Constitution of Maryland, which prohibits the taking of private property for public use except upon just compensation being first paid or tendered, then the injunction should have been granted. But if, on the contrary, this was not such a *taking* as the Constitution has reference to, and injury has been done the appellant, then, his remedy is in another and a different forum; and the ninth section of the ordinance heretofore alluded to makes ample provision for the prompt and effective enforcement of such judgment as a Court of law, in an appropriate proceeding, may pronounce.

That there was no actual appropriation of, or entry upon, a single foot of the land contained within the outlines of the appellant's deed is admitted, and could not be denied; and, therefore, to support the theory of the bill, the *consequences* which it is asserted will result to the appellant from the occupancy by the railway of contiguous land, forming part of the bed of a highway and owned

by some one else, but subject to an easement in the public, and which consequences are not physical invasions of the plaintiff's soil nor an ouster of him therefrom, are treated by the appellant as a *taking* of that which is confessedly neither encroached upon nor used at all. The consequential damages resulting from the act complained of—the incidental injuries to the owner—are thus charged to be a *taking* of private property for a public use, though the property itself remains unappropriated and unapplied to that use in any way whatever.

Whilst the Constitution of the State has prohibited the taking of private property for a public use without compensation being first paid or tendered, it has not undertaken to define or declare what shall be a taking within its terms.   True, there is some conflict among adjudged cases as to what amounts to such a taking, but the overwhelming weight of authority accords with the conclusions which this Court announced in two cases that will be fully referred to later on.   Apart from the decisions of the Supreme Court of Ohio (see *Crawford vs. Village of Delaware*, 7 *Oh. St.*, 460), which rest upon a doctrine peculiar to that State, and the recent New York decisions in the Elevated Railway cases (*Story vs. New York Elevated R. R. Co.*, 90 *N. Y.*, 122; *Lahr vs. Metropolitan Elevated R. Co.*, 104 *N. Y.*, 268), which are hopelessly in conflict with the principles announced in other cases in the same State (*Radcliff vs. Mayor, &c., of Brooklyn*, 4 *Com.*, 195; *Fobes vs. R. W. & O. R. R. Co.*, 121 *N. Y.*, 505), and the decisions in Minnesota (*Adams vs. Chicago, Burlington & Northern R. R. Co.*, 39 *Minn.*, 286 ; *Lamm vs. Chicago, St. P. M. & O. R. R. Co.*, 10 *L. R.A.*, 268), and a few cases in Mississippi (*Theobold vs. L., N. O. & T. Ry. Co.*, 66 *Miss.*, 279), and possibly one or two other States, all substantially following the New York Elevated Railway cases; there is practically an unbroken current of adjudged cases broadly and clearly marking and defining the

difference between an incidental injury to, and an actual taking of, private property. An injury to, and a taking of, such property are distinct things. Every taking involves an injury of some kind, though every injury does not include a taking. "Property is *taken* by an entry upon and appropriation of it, as in the ordinary case of location. It is *injured* by obstructing access, as in *Duncan's case,* (111 *Penn. St.,* 352), or drainage, as in *Ziemer's case* (124 *Penn. St.,* 560)." *Jones vs. Erie & W. V. R. Co. (Pa.),* 25 *Atl. Rep.,* 137. In *Transportation Co. vs. Chicago,* 99 *U. S.,* 635, the Court said: "Persons appointed or authorized by law to make or improve a highway are not responsible for consequential damages, if they act within their jurisdiction, and with care and skill, is a doctrine almost universally accepted alike in England and in this country." *Governor and Company of British Cast-Plate Mfs. vs. Meredith,* 4 *T. R.,* 794 ; *Sutton vs. Clarke,* 6 *Taunt.,* 29 ; *Boulton vs. Crowther,* 2 *Barn. & C.,* 703 ; *Green vs. The Borough of Reading,* 9 *Watts,* 382 ; *O' Connor vs. Pittsburgh,* 18 *Pa. St.,* 187 ; *Callender vs. Marsh,* 1 *Pick.,* 418; *Smith vs. Corporation of Washington,* 20 *How.,* 135. * * * "The decisions to which we have referred were made in view of Magna Charta and the restriction to be found in the Constitution of every State, that private property shall not be taken for public use without just compensation being made. But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision." And this was affirmed in *Chicago vs. Taylor,* 125 *U. S.,* 161. The constitutional right to compensation for private property taken for public use does not extend to instances where the land is not actually taken, but only indirectly or consequentially injured. *Ottawa, O. C. & C. G. R. R. Co. vs. Larsen,* 2 *L. R. A.,* 59 ; *Omaha Horse Ry. Co. vs.*

*Cable Tram-way Co.*, 32 *Fed. Rep.*, 727; *Heiss vs. Milwaukee & L. W. R. Co.*, 69 *Wis.*, 555; *Grand Rapids & I. R. R. Co. vs. Heisel*, 38 *Mich.*, 62; *Cosby vs. Owensboro & Russellville R. R. Co.*, 10 *Bush.*, 289; *Dorman vs. City of Jacksonville*, 13 *Fla.*, 545; *Bradley vs. N. Y. & N. H. R. R. Co.*, 21 *Conn.*, 308; *Spencer vs. P. P. & O. R. R. Co.*, 23 *W. Va.*, 407; *Richardson vs. Vermont and Central R. R. Co.*, 25 *Vt.*, 465; *Balto. & Potomac R. R. Co. vs. Fifth Bap. Ch.*, 108 *U. S.*, 317.

This distinction between consequential damages and an actual taking, thus firmly settled, was frequently severe in its results, particularly when the power of eminent domain had been exercised by municipal corporations, and with a view of relaxing its rigors to some extent, many of the States of the Union changed their organic law so as to require compensation to be made for incidental injuries, precisely as though there had been a physical taking of the property. Thus the Constitution of Pennsylvania of 1873, and of Alabama of 1875, provide that when private property is taken for public use, just compensation shall be made for the property *taken, injured or destroyed;* that of Arkansas of 1874, that private property shall not be *taken, appropriated* or *damaged*; that of Illinois of 1870, West Virginia of 1872, Missouri of 1875, Colorado and Texas of 1876, Georgia of 1877, and California of 1879, that it shall not be *taken* or *damaged. Selden vs. City of Jacksonville*, 14 *L. R. A.*, 375. Such changes would have been wholly unnecessary if the view of the appellant as to what constitutes a *taking* of private property had prevailed.

But the immunity which protects from liability governmental agencies in the proper and skilful performance of their public functions does not extend to private persons or mere *quasi* public corporations; and, therefore, whilst in both instances the same distinction between an actual

taking of private property and consequential injuries to it when not taken is applicable, a private person or a *quasi* public corporation is liable in damages to the individual incidentally injured, though the act complained of and occasioning the injury was in itself lawful. Hence for such injuries as are complained of here, though they do not amount to a taking of property, if found to exist, there is a remedy in a Court of law. *Balto. & Potomac R. R. Co. vs. Reaney*, 42 *Md.*, 117. The ninth section of the ordinance authorizing the construction of the abutment and the elevated road, expressly provides that if any judgment recovered against the company for such injuries as are here complained of, shall remain unpaid for sixty days, " all the rights " of the company under the ordinance " shall cease and be in abeyance until the judgment shall be paid," and the right to operate the road " shall only be revived after the payment thereof."

In the case of *Mayor & C. C. of Cumberland vs. Willison*, 50 *Md.*, 148, the distinction between consequential injuries and an actual taking of property was considered, and it was distinctly held that damages done to a water-power of a mill by means of an increased flow of water carrying debris into the race caused by the grading and paving by the city of one of its public streets, was not a taking of property. " Property *thus injured* is not in the constitutional sense *taken* for public use," *p.* 148. And again, in *O'Brien vs. The Balto. Belt Railroad Co.*, 74 *Md.*, 363, the question now before us was directly presented. There the plaintiff was an abutting owner on the east side of Howard street in Baltimore city, with no freehold or leasehold estate in the bed of the street, and he claimed that by reason of his abutting proprietorship he had such an interest in the street as to entitle him to compensation according to the provisions of *Art.* 3, *sec.* 40 of the Constitution for the injury occasioned him by the act of the railroad company in constructing its road in an open cut

Garrett *vs.* Lake Roland Elevated Railway Co.

on the west side of Howard street and opposite his property. Because he had not been paid or tendered compensation he filed a bill in equity, praying for an injunction to restrain the construction of the open cut. The precise question for determination was "whether the use of the street by the railroad company, in the manner proposed, and under the conditions stated, would be such *taking of private property* of the plaintiff as is forbidden by the Constitution of this State, except upon payment of just compensation first being made." And in the course of the opinion it was said: "But, notwithstanding the railroad company may be liable on common law principles, the question still remains to be answered, will the cutting and use of the street, as proposed by the railroad company, be the *taking* of private property, in respect of the rights of the plaintiff as abutting lot owner, within the meaning of the Constitution? As already stated, it is not charged that there will be any invasion of, or physical interference with, any part of the plaintiff's lot, in the construction of the road. The most that he claims for is that he will be deprived of the full use of the street, as it now exists, and that his property will be depreciated in value by the construction of the road. This, however, is but an injury, to whatever extent it may be suffered, *of an incidental or consequential nature.* * * * In such case as this, therefore, it would seem to be clear, both upon principle and authority, that there is no such taking of private property for public use as is contemplated by the Constitution of the State; and hence there is no ground for any preliminary proceeding by way of condemnation."

We must either adhere to these two decisions in 50 *and* 74 *Md.*, strictly in accord, as we have shown them to be, with the decided weight of judicial opinion on this subject, or else, receding from them, adopt the Ohio or the New York doctrine. We see no reason for departing from or for modifying our former deliberate judgments. The

Ohio doctrine is peculiar to that State alone. *O'Connor vs. Pittsburgh, supra; Transportation Co. vs. Chicago, supra,* and is so admitted to be in *Crawford vs. Delaware, supra.* The New York doctrine involves this inextricable dilemma, viz., If the grading of a street by a municipal corporation cuts off all access to a person's house, albeit his property is thereby destroyed and rendered valueless, it is *not taken* in the constitutional sense; but if a railroad company in lawfully constructing its road does precisely the same thing that the city did in grading the street, then the abutter's property *is taken,* though not physically entered upon at all. " The house and lot are the same; the street is the same; the acts done are the same; the use for which they are taken is a public use in each case, and yet the Court must hold that there is a taking of property in one case and not a taking of property in the other." *Mr. Cowen's brief in O'Brien's case, supra.*

The abutment and elevated structure having been built under legislative authority, are not a nuisance. *O'Brien vs. Balto. Belt R. R., supra.* " That cannot be a nuisance such as to give a common law right of action, which the law authorizes." *Transportation Co. vs. Chicago, supra.* "It may be stated as a general rule that whatever is authorized by statute within the scope of legislative powers, is lawful, and therefore cannot be a nuisance." 2 *Wood, Railway Law,* 970. The structure is therefore a lawful one. It does not destroy the street as a street, though it may cause the plaintiff greater inconvenience in gaining access to his lots than he encountered before it was built. But this and the other injuries complained of are purely incidental and consequential; though the appellant is not without a remedy therefor. Whilst it is stated as a general rule that no action will lie by an abutting lot-owner, who does not own the fee in the street, for injuries which merely result from the legal and rea-

sonable use of a public street by a railway company, and which leaves his right of egress and ingress reasonably sufficient, *Iron Mt. R. Co. vs. Bingham,* 4 *L. R. A.,* 622; still, the statute law of Maryland and the ordinance to which we have alluded, (and the terms of which the appellee has accepted,) provide an ample remedy for all such damages as the appellant may be able to show he has sustained. The North Avenue Railway Company, one of the corporations forming the Lake Roland Elevated Railway, was incorporated under *Article* 23 *of the Code;* and *sec.* 169 of that Article holds every railroad company laying its tracks upon any public street responsible for "injuries done to private property," lying upon or near to such street, "by such location"; and the damages thus occasioned may be recovered by civil action. Section nine of the ordinance No. 23, already referred to, makes the payment of such damages, when judicially ascertained, absolutely certain, or suspends the operation of the road.

Upon a full and most careful consideration of the whole case we are of opinion that the decree dismissing the bill of complaint was properly passed, and it will therefore be affirmed.

> *Decree affirmed, with costs
> above and below.*

(Decided 19th June, 1894.)

BRYAN, J., delivered the following dissenting opinion:

Robert Garrett is the owner in fee simple of a lot of ground in the city of Baltimore, situated on the west side of North street, between the north side of Eager street and the south side of Chase street, fronting about four hundred and thirty-six feet on North street, with a depth of one hundred and sixty-eight feet westerly to Hunter alley. He also owns in fee another lot on the western side of North street, with a frontage thereon of about

three hundred and fifty-six feet, and running back westerly about one hundred and sixty-eight feet to Hunter alley, and extending from the north side of Chase street to the south side of Biddle street. He does not own the fee in the bed of North street. The Lake Roland Elevated Railway Company has erected on North street a stone abutment in front of the first mentioned lot. This abutment is eighty-eight feet long and fifteen feet and eight-tenths wide, and is distant about nine feet and eight inches from the curb-line on the western side of the street. It commences at grade at the northern end, and ascends as an inclined plane until it reaches the height of nine feet at its highest point. It is distant about ten feet six inches from the curb-line on the eastern side of the street. North street is a public highway, having a width of thirty-six feet between the curb-lines on the opposite sides of the street. The stone abutment above mentioned was erected shortly before the commencement of proceedings in this case. Since that time an iron superstructure has been placed upon it for an elevated railroad. Garrett filed a bill in equity for an injunction to restrain the Lake Roland Company from placing its elevated railroad structure on the abutment, and praying for its demolition and removal and for general relief. The Lake Roland Company claims the right to erect this abutment under the authority of an ordinance of the Mayor and City Council of Baltimore. The Court below dismissed the bill of complaint.

Before we examine the ordinance let us inquire what are the rights of the complainant independently of its provisions. When North street was opened, two-thirds of the expense of its construction was assessed upon the property benefited by the opening of the street. The existence of the street enhanced the value of the coterminous property, and the proprietors were required to pay the price of this enhancement by contributing two-thirds of the expense of the improvement. They paid for something

quite distinct from the rights which all other inhabitants of the city had in the street. They, of course, had the same right of using the street as belonged to the general public, but beyond and in addition to this right they acquired great advantages and conveniences by having a wide public street in front of their lots of ground. These advantages and conveniences were bought and paid for; and the money was paid for the purpose of increasing the value of their property. These advantages and conveniences, comprising among other things facility of access, adapted the ground to those uses for which in a large city it is most desirable. Ordinance No. 23 of the Mayor and City Council of Baltimore (approved April 8th, 1891) authorized the construction of an elevated railway by the corporation to whose rights the Lake Roland Company has succeeded. The fifth section of this ordinance enacted that the said corporation should have the power to bridge the tracks of the Northern Central Railway Company from the corner of Eager and North streets to the corner of Saratoga and North streets; and to make the proper and necessary elevated structure for the purpose of effecting said crossing and the approaches thereto. This ordinance has been ratified and confirmed by the Act of 1892, chapter 112. We may assume for all the purposes of this discussion that the structure in question has been erected in conformity with the requirements of the ordinance. Its effect upon the condition of the street is very obvious. It very seriously impedes travel and transportation. And, with respect to the complainant, it erects an impassable barrier in front of a portion of his property, and takes away from it the value derived from a frontage upon an open public street thirty-six feet wide. The available space is reduced to about ten feet. We do not at present find it necessary to make an estimate of the damage thus inflicted. The testimony shows it to be very great. If this structure had not been authorized by

legislative authority, it would have been a public nuisance of an aggravated character. But as a matter of course it cannot be so regarded after it has received the sanction of the General Assembly and the Mayor and City Council of Baltimore. Private rights, however, are not affected by any legislation which has taken place. They are amply secured against infringement by the Declaration of Rights. According to the nineteenth Article, "every man for any injury done to him in his person or property ought to have remedy by the course of the law of the land, and ought to have justice and right * * * * according to the law of the land." And the twenty-third Article declares that "no man ought to be * * * * deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land." The legislature has paramount authority over all public highways, and may direct the mode in which they are to be used. It has seen fit to confer on the Mayor and City Council of Baltimore the power to regulate the use of the streets in that city. But it has never been supposed that either the Legislature or the Mayor and City Council could exempt a private corporation from responsibility for any wrongs done in using the streets under their authority. And no such proposition has been maintained in the argument of this case. When the city in the exercise of its corporate powers proceeds to close a street, it is required to ascertain by due process of law the amount of damage which will be done by closing it, and to pay over to each one who is injured the amount he is entitled to receive, or invest it in city stock for his benefit before the street is closed. *Public local Laws, Article 4, section* 806. In this way those persons are indemnified, who, by the closing of a street are deprived of the advantages, conveniences and valuable legal rights dependent on its existence as a public highway. It is true that North street has not been closed by the proceedings in this case. But other injuries are to be re-

dressed by the remedies which the law has prescribed as appropriate to their particular circumstances. Where a railroad company had a right to make a tunnel in a street, and in the careful exercise of this right, it damaged the walls of a house, it was held that the owner of the house was entitled to recover compensation for the injury, even although it were the natural or inevitable consequence of the act which was authorized by law. *Balto. & Potomac Railroad Co. vs. Reaney,* 42 *Maryland,* 117. In the present case the abutment to the extent of its dimensions subverts and destroys every possible use for which a street is intended; it obstructs the access to the property adjacent to it, and makes it impossible for the owner to use it in the manner in which he has a right to use his property. The street for a distance of eighty-eight feet has disappeared, and a narrow alley has been substituted in its place. Now, admitting this to be an injury which must be redressed, the inquiry is, what remedy has the law declared to be appropriate to such a case. If the ordinance and the ratifying statute cannot exempt the Lake Roland Company from responsibility for injuries committed, it must follow as a consequence that it is liable to the same proceedings as any other wrong-doer under similar circumstances. The appropriate remedy for obstructing a right of way is an injunction to remove the obstruction. This was clearly decided in *White vs. Flannigain,* 1 *Md.,* 525. In general terms the rule in equity is stated to be that an injunction will not be granted " when a trespass is fugitive and temporary, and adequate compensation can be obtained in an action at law." But the rule does not imply that where a trespasser is destroying the property of another person, equity will refuse to interfere, because the value of the property might be recovered in an action at law. Every man is entitled to the use and enjoyment of his property in any lawful manner which suits his wishes and purposes. Hence there is a neces-

sary limitation or explanation of the general rule. An injunction will be issued where the trespass reaches to the substance and value of the estate, and goes to the destruction of it in the character in which it is enjoyed, or where it would impair the just enjoyment of it in the future. *White vs. Flannigain*, 1 *Md.*, 545; *Shipley vs. Ritter et al.*, 7 *Md.*, 413-415; *Story's Equity Jurisprudence, section* 928. In *White vs. Flannigain* it was said: "We have seen that the complainant is entitled under an implied covenant to a right of way over the forty-five foot street. Any obstruction which denies the exercise and use of this right works irreparable mischief to the street as a *street*. The thing ruined by the obstructions is a street, and, as in the case of the mine, the complainant, on the principle there recognized, has a right to the aid of a Court of equity. What he complains of is, the *destruction* of the *street*. He is entitled to the enjoyment of it as a *street*." In *Corning vs. Lowerre*, 6 *Johnson's Chancery Reports*, 439, a bill was filed for an injunction to restrain the defendant from obstructing Vestry street in the city of New York, averring that he was building a house upon it to the great injury of the plaintiffs as owners of lots on and adjoining that street. Chancellor Kent granted the injunction, saying that it was "a special grievance to the plaintiffs, affecting the enjoyment of their property and the value of it. The obstruction was not only a common or public nuisance, but worked a special injury to the plaintiffs." Of course, in the present case the complainant cannot maintain that the obstruction is a public nuisance; but he is entitled to protection against "a special grievance affecting the enjoyment of his property, and the value of it." In *Hart vs. Buckner*, 2 *United States Appeals, Fifth Circuit*, at page 488, the Court say: "Owners of lots abutting on and adjacent to a public street of a city, even if not owners of a fee in the street, have the right of access and

the right of quiet enjoyment, and such rights are property which may be protected by injunction when invaded without legal authority." From many other cases illustrating this point, we will select two from the Supreme Court of the United States. In *Rail Road Company vs. Schurmeir,* 7 *Wallace,* 272, the complainant alleged that the railroad company was constructing a railroad track over and along a public street, levee and landing in front of certain real estate in the city of St. Paul, belonging to him, and that the purpose was to run cars thereon for the transportation of freight and passengers, and that if this purpose should be carried into effect the street, levee and landing could not be occupied and used for the purposes for which they were constructed, and to which they were dedicated, and that his premises would be rendered useless and valueless. The railroad company denied that Schurmeir was the owner of the fee in the street, and set up title in itself as grantee of the State of Minnesota. It was shown in evidence, among other things, that the person under whom Schurmeir claimed title had by certain formal proceedings dedicated to the public the street, levee and landing; and it was contended that thereby under the laws of Minnesota, the entire fee was vested in the State. It was also shown that the city of St. Paul claimed entire control over the said premises, and had established a grade for the same. In reference to the statute which was alleged to vest the fee in the State, the Court said: " Suppose the construction of that provision, as assumed by the respondents, is correct, it is no defense to the suit, because it is nevertheless true, that the municipal corporation took the title in trust, impliedly, if not expressly, designated by the acts of the party in making the dedication. They could not, nor could the State, convey to the respondents any right to disregard the trust, or to appropriate the premises to any purpose which would render valueless the adjoining real estate of the complainant." It was decreed

that the railroad company should be enjoined from the further prosecution of its work, and that it should remove from the street, levee and landing in front of Schurmeir's premises all tracks, trestle-works, buildings and obstructions of every kind which it had constructed for railroad purposes. In *Barney vs. Keokuk,* 94 *United States,* 324, it appeared, among other things, that a railroad company had erected in Water street, in the city of Keokuk, a permanent and substantial building, and that it covered the whole of the front of the plaintiff's lots binding on the street. The Circuit Court decided that the railroad company had acquired from the municipal authorities a right to lay down their tracks in the street, but the assent of the municipality could not confer the right to erect this building in the street. The Supreme Court said: "The construction of a permanent freight depot in Water street was an unauthorized and improper occupation of that street. It was a total obstruction of the passage; and this, as we have said, cannot be created or allowed. It is subversive of, and totally repugnant to the dedication of the street as well as to the rights of the public." It may be said that in this case the complainant is not entirely deprived of the use of the street. This is true. But there is a very serious impediment to the use of the street by vehicles; although the obstruction is not total. A solid stone structure eighty-eight feet long and about sixteen feet wide ascends from the grade of the street to a height of nine feet. Before its erection there was an open street in front of Garrett's lot measuring thirty-six feet from curb to curb; the open space in front of his lot has been so much reduced that it measures less than ten feet. He is not deprived of all use of his lot; but he is prevented from the advantageous use of it which he has a right to make, and upon which its value very largely depends. It cannot be said that his property has been destroyed; but in the language of the authorities, the injury reaches to

the very substance and value of the estate, and goes to the destruction of it in the character in which it has been enjoyed. And it impairs the just enjoyment of the property in the future. This last circumstance is one of the tests given by Judge STORY to determine the propriety of an injunction. *Story's Equity Jurisprudence, section* 928. If an individual should blockade the access to the complainant's lots, and say to him, "you may sue me for damages, and recover full compensation for the injury which I have done to you," a Court of equity would not tolerate such an excuse for the trespass, but would order the removal of the obstruction. In whatever way the City Council may authorize the public use of the streets for railroad purposes, it can in no manner diminish or disparage private rights in connection with them. These are under the protection of the law of the land, and any invasion of them must be redressed by the ordinary process of the tribunals of justice. It is not competent for the City Council (with or without the sanction of the Legislature) to debar an injured party from a resort to the ordinary remedies provided by the law of the land for the protection of property, and to restrict him to an action for damages. If any such effect be attributed to the ninth section of the ordinance of the Mayor and City Council of April 8th, 1891, it must be determined that for such purpose it is simply void.

In *O'Brien vs. Baltimore Belt Railroad Co.,* 74 *Maryland,* 363, it was decided that as there had not been a physical invasion of the property of the complainant by the railroad company, there was no taking of private property within the meaning of the Constitution, and that, therefore, there was no ground to require a condemnation before proceeding with the work of the railroad. The complainant was the owner of property abutting on a street in which the railroad company was making a cut so as to provide an entrance to a tunnel, which it was

authorized to construct. The injury to the complainant was not regarded as serious. It would not, therefore, according to the principles above stated, have justified an injunction. Let us quote the language of the Court: " It is not charged or in any way claimed that the plaintiff will be deprived of, or seriously hindered in the right of access to his property from the street by the making of the cut * * * * The street, after the cut is made, will still remain in front of the plaintiff's property on the east side of the cut, about forty-one feet wide. There is no question, therefore, presented here as to the right of the plaintiff to compensation for obstructing access to his property from the street," page 371. This passage shows a marked difference between that case and the present one.

I see nothing to defeat the complainant's right to such relief as a Court of equity is able to give him, unless he has lost it by delay in instituting these proceedings. The evidence does not show the precise time at which the abutment was completed; but the plans for the elevated road were approved by the City Commissioner, July the twenty-eighth, eighteen hundred and ninety-two, and the bill of complaint was filed November the fifteenth of the same year. The superstructure was placed on the abutment after the filing of the bill. There could not have been much delay on the part of the complainant in instituting these proceedings; certainly not so much as would defeat his right to relief on the ground of laches, or acquiescence in the construction of the abutment. The usual course would be to decree a removal of the obstruction, and this ought to be done in the present instance, if it were necessary for the protection of the complainant's interests. But a Court of equity in the exertion of its powers is always governed by a benignant sense of justice, and never, even in the redress of wrongs, inflicts needless injury. The removal of the abutment would prevent the Lake Roland Company from making efficient use of its

road, and would cause incalculable damage to its business. We ought, therefore, to forbear to order the removal if it will repair the injury which it has produced. It has been often said that the granting or refusing an injunction is a matter resting in the sound discretion of the Court. This may, perhaps, be considered rather a vague statement. But, however, in exercising this jurisdiction the Courts take into view all the facts affecting the rights of the parties concerned, and frame their decisions in such manner as to do complete justice between them. They may grant an injunction on terms, and they may dissolve it on terms. We do not fail to see that in this case a rigid application of abstract rules of procedure would do more injustice than it would remedy. But by reason of the plastic character of equity practice we are enabled to mould our decree in this case in such manner as to attain substantial justice. A notable instance in which the relief was modified to suit the circumstances of the case may be found in *Green vs. Drummond et al.*, 31 *Md.*, 71; although it was entirely different from that prayed in the bill of complaint. A bill in equity was filed for the specific performance of a contract for the purchase of real estate. The Court decided that specific performance could not be decreed; but nevertheless as the complainant had expended money on the faith of the contract, it decreed him pecuniary compensation. The complainant contends that the Lake Roland Company has no right to deprive him of the means of access to his property, and of the other benefits of the street, without first making him compensation, to be agreed upon between them, or to be ascertained by condemnation under the right of eminent domain. According to the decision in *O'Brien vs. Baltimore Belt Railroad*, we cannot sustain his position that this is a case for the exercise of the right of eminent domain. If, however, there had been a condemnation of this kind, he would have been awarded

a sum of money sufficient to compensate him for the rights taken from him. If we render a decree in his favor for this amount, we will satisfy the demands of justice as fully as we are able to do under the circumstances of this case. We ought, therefore, to compute from the evidence the amount of the damage which has been done to him, and decree that the Lake Roland Company shall pay this sum to him. If it shall not be paid within ninety days, we ought to order the abutment to be removed.

(Filed 19th June, 1894.)