# DAVID ANDREWS ET AL. *v.* CITY OF GREENBELT

[No. 97, September Term, 1981.]

*Decided March 8, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Jeffrey M. Axelson* and *Douglas M. Bregman,* with whom were *Van Grack, Axelson & Williamowsky* on the brief, for appellants.

*Emmett H. Nanna, Jr., City Solicitor,* for appellee.

*Amicus curiae* brief filed for Council of Owners, Greenbriar Condominium, Phase I, *Leo Wm. Dunn, Jr., Manuel A. Palau* and *Dunn & Emig, P.A.* on the brief.

DIGGES, J., delivered the opinion of the Court.

In accord with a national trend, the General Assembly of

Maryland in 1963 authorized the existence of a communal form of estate in property consisting of individually owned units which are supported by collectively held facilities and areas. Md. Laws, 1963, ch. 387, presently codified with amendments as § 11-101 *et seq.* of the Real Property Article, Md. Code (1974, 1981 Repl. Vol.). The dispute here presents us with the novel question of whether the individual unit owners in such a "condominium regime" are entitled to separate awards for consequential damages to their respective units which result from a partial taking of the general common elements by way of eminent domain.[1] The appellants, twenty-four of the individual unit owners in Greenbriar Condominiums — Phase I, here contend that the trial judge erred in omitting their names from the inquisition and in instructing the jury to determine a lump sum compensation award in favor of the council of unit owners,[2] as just compensation for the recoverable losses

---

1. The Maryland Condominium Act, frequently referred to as the Horizontal Property Act, in Section 11-101 of the Real Property Article, Md. Code (1974, 1981 Repl. Vol.) defines, though not in the order presented here, the relevant terms of the statute as follows:

(j) Unit. — "Unit" means a three-dimensional space identified as such in the declaration and on the condominium plat and shall include all improvements contained within the space except those excluded in the declaration, the boundaries of which are established in accordance with § 11-103 (a) (3). A unit may include two or more noncontiguous spaces.

(k) Unit owner. — "Unit Owner" means the person, or combination of persons, who hold legal title to a unit. A mortgagee, as such, may not be deemed a unit owner.

(b) Common elements. — "Common elements" means all of the condominium except the units.

(1) "Limited common elements" means those common elements identified in the declaration or on the condominium plat as reserved for the exclusive use of one or more but less than all of the unit owners.

(2) "General common elements" means all the common elements except the limited common elements.

Section 11-107 (a) provides: "Each unit owner shall own an undivided percentage interest in the common elements equal to that set forth in the declaration. . . ."

2. The condominium statute provides, in part, that: "[T]he affairs of the condominium shall be governed by a council of unit owners which, even if unincorporated, is constituted a legal entity for all purposes. The council of unit owners shall be comprised of all unit owners. . . . The bylaws may

suffered by all the parties in the complex. Even though the condominium documents [3] in this case appropriately authorize the council of owners to receive on behalf of the unit owners the damages payable for injury to the general common elements, we agree with the appellants that in order to effectuate the taking of any portion of these elements each unit owner must be named in the inquisition form submitted to the jury. We are unable, however, to determine from the record before us whether an individual unit holder, as opposed to the council of unit owners, is entitled to personally receive the damages, if any, for consequential injury to his respective unit caused by the city's eminent domain action. We shall therefore vacate the judgment, and the inquisition upon which it was entered, and remand the matter to the circuit court for further proceedings.

This controversy began when the City of Greenbelt, Maryland, decided to construct a pedestrian bridge, principally as an access route for students attending the Eleanor Roosevelt High School, over the heavily travelled Baltimore-Washington Parkway. In order to accomplish this objective the city found it necessary to acquire in fee simple a small parcel of a parking lot (approximately one tenth of an acre) constituting a portion of the general common elements of the Greenbriar Condominiums.[4] Although not originally named as parties in the first amended condemnation petition, as were the developer, its corporate agent and the Council of Unit Owners of Greenbriar Condominiums, all 252 individual unit owners and their respective mortgagees at the instigation of the court were subsequently

---

authorize or provide for the delegation of any power of the council of unit owners to a board of directors, officers, managing agent, or other person for the purpose of carrying out the responsibilities of the council of unit owners." § 11-109 (a) and (b).

**3.** In order to establish a condominium regime, § 11-102 (a) requires the owner to file in the county where the property is located a declaration, bylaws and condominium plat that comply with the specifications set out in the statute.

**4.** In addition, the city sought a temporary construction use easement on two strips of land contiguous and parallel to the parcel taken in fee simple until the paved accessway was completed.

included by amendment as defendants in this case. While service of notice was accomplished as to each, only a small number of the individual unit owners filed a responsive pleading.

Throughout the jury trial in the Circuit Court for Prince George's County on the issues presented by this eminent domain action, the judge permitted the parties to introduce expert testimony regarding both the direct and consequential damages to the common elements, as well as any consequential loss to the remaining area of the condominium regime which resulted from the taking, but refused to allow testimony concerning any unit owner's individual loss to his specific unit. At the close of the testimony, the trial judge omitted the specific names of all the unit owners from the inquisition form and instructed the jury to calculate one lump sum to be awarded to the council of unit owners as just compensation for the taking. Thus, as a matter of law, each individual unit owner's separate claim for consequential damages to his respective unit was denied. The jury, in response to the court's instruction, returned the inquisition in favor of the council of unit owners in the amount of twenty-nine thousand dollars ($29,000). When the appellants noted their timely appeal to the Court of Special Appeals, we granted certiorari on our own motion, prior to consideration of the matter by that court, in order to address the important questions presented by this case.

Generally speaking, a condominium is considered "an estate in real property consisting of an undivided interest in common in a portion of a parcel of real property together with a separate interest in space in a residential, industrial or commercial building on such real property." *Annot.*, 72 A.L.R.3d 314 (1976). Since a condominium complex usually consists of numerous parties with property interests in the regime, a unit owner agrees as a condition of his purchase to be bound by rules and regulations promulgated by an association of unit owners for the administration and maintenance of the property. Such a condominium owner thus possesses a hybrid form of property interest: one in fee simple to the exclusion of everyone, and the other as a tenant in

common with his fellow unit owners.[5] The Maryland Condominium Act embraces this dual form of property ownership, § 11-107 (a); 64 Op. Md. Att'y Gen. 334, 335 (1979), and specifically provides that the percentage interest of the unit owner in the common elements attaches to the unit and cannot be separated by sale, subdivision, or consolidation. § 11-107 (d). Since the focal point of this controversy is a conveyance of a portion of the general common elements through eminent domain and no party here contests the authority of the City of Greenbelt to effectuate this taking, we turn our attention to the section of the condominium statute which controls the allocation of any just compensation award that becomes due as a result of the acquisition.[6]

In relevant part Section 11-112 pertaining to eminent domain provides:

> (b) Allocation of award — Provisions in declaration or bylaws. — The declaration or bylaws may provide for an allocation of any award for a taking under the power of eminent domain of all or a part of the condominium. The declaration or bylaws also may provide for (1) reapportionment or other change of the percentage interests appurtenant to each unit remaining after any taking; (2) the rebuilding, relocation, or restoration of any improvements so taken in whole or in part; and (3)

---

**5.** The idea of a condominium first took root in this country in Puerto Rico in the 1950's. Its acceptance on the mainland, however, was somewhat restrained until 1961 when Congress passed legislation authorizing the Federal Housing Administration (FHA) to make mortgage insurance available for the condominium form of ownership as long as the state in which the property was located had established its real property existence. 12 USCS § 1715Y (amendment to the National Housing Act, § 234). This federal action prompted numerous state legislatures to pass laws authorizing condominium ownership in their states. Today, every state has legislatively sanctioned the existence of condominium regimes.

**6.** The payment of just compensation for the taking of private property for public use is required by Sections 40-40D of Article III of the Maryland Constitution. The constitutional provisions require the State to provide for nothing less than "just compensation", but they do not prevent the legislature from deciding to pay more than that minimum. Lore v. Board of Public Works, 277 Md. 356, 358-59, 354 A.2d 812, 814 (1976).

the termination of the condominium regime following any taking.

(c) Same — In absence of provisions in declaration or bylaws. — Unless otherwise provided in the declaration or bylaws, any damages for a taking of all or part of a condominium shall be awarded as follows:

(1) Each unit owner shall be entitled to the entire award for the taking of all or part of his respective unit and for consequential damages to his unit.

(2) Any award for the taking of limited common elements shall be allocated to the unit owners of the units to which the use of those limited common elements is restricted in proportion to their respective percentage interests in the common elements.

(3) Any award for the taking of general common elements shall be allocated to all unit owners in proportion to their respective percentage interests in the common elements.

At the outset we resolve a dispute relative to the proper interpretation as to the just quoted § 11-112 with particular reference to subsection (c) (1). In this regard, it is now axiomatic that the guiding principle of statutory interpretation is to ascertain and carry out the real intent of the legislature when it enacts a statute. *See, Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 311, 407 A.2d 738, 742 (1979); *Frank v. Baltimore County,* 284 Md. 655, 658, 399 A.2d 250, 253 (1979). If the intent can be discerned from the words utilized in the enactment, with the terminology chosen being given its ordinary and popularly understood meaning, the court need look no further as that clearly expressed intention will control. *See, Mauzy v. Hornbeck,* 285 Md. 84, 92, 93, 400 A.2d 1091, 1096 (1979); *Gietka v. County Executive,* 283 Md. 24, 27, 387 A.2d 291, 292 (1978). It is our view that the Maryland Condominium Act, by the wording of § 11-112 itself, demonstrates the adoption of a legislative scheme for the allocation of condemnation awards. This sec-

tion unambiguously provides that, absent a contrary direction in the condominium documents, awards for the taking of a portion of an individual unit, as well as any consequential damages resulting from a partial taking of such a unit or a partial taking of the limited common elements (if compensable), shall be paid to the affected unit owner. On the other hand, awards for the taking of a portion of the general common elements, as well as any consequential damages to the remaining such elements, are to be paid to all unit owners in proportion to their respective interests in those areas. With this interpretation before us, we point out that none of the parties disputes that the collective interests of the owners in the one-tenth of an acre of general common element property taken here in fee simple, along with any consequential damages to the remaining general common areas, are to be compensated for through the payment of a lump sum award to the Greenbriar Condominiums Council of Unit Owners. Consequently, the primary question for this Court now becomes whether there can ever be a compensable consequential injury to an individual unit which results from an actual taking of a portion of only the general common elements.

It is usually held that one whose land is harmed because of an act done pursuant to the proper exercise of eminent domain is not entitled to compensation unless there has been a physical taking or invasion of his property which impairs its use. *Friendship Cemetery v. Baltimore,* 197 Md. 610, 619, 81 A.2d 57, 61 (1951); *DeLauder v. Baltimore County,* 94 Md. 1, 7, 50 A. 427, 429 (1901); *Garrett v. Lake Roland R.R. Co.,* 79 Md. 277, 295, 29 A. 830, 832 (1894); 4A Nichols: *The Law of Eminent Domain,* § 14.01[1] (3d ed. 1981). When an owner's land is taken, as just compensation therefor, he is entitled to the market value of the property which is to be estimated with reference to the uses and purposes to which it is adapted at the time of the condemnation. *State Roads Comm. v. Hance,* 242 Md. 137, 139, 218 A.2d 33, 35 (1966); *Brack v. M. & C. C. of Balto.,* 125 Md. 378, 381, 93 A. 994, 995 (1915). Moreover, if the land being acquired is part of a larger unitary tract, so as to constitute a partial taking, the

owner is entitled not only to receive the value of the land taken but also to payment for any consequential damages caused to the remaining area. *Mont. Co. v. Old Farm Swim Club,* 270 Md. 708, 711, 313 A.2d 458, 460 (1974); *State Roads Comm. v. Hance, supra* at 139, 218 A.2d at 35; *State Roads Comm. v. Adams,* 238 Md. 371, 376-77, 209 A.2d 247, 249 (1965); *Reindollar v. Kaiser,* 195 Md. 314, 319, 73 A.2d 493, 495 (1950); *Improvement Co. v. Gas Etc. Co.,* 156 Md. 581, 588-89, 144 A. 710, 713 (1929); 4A Nichols, *supra,* at § 14.01[2]. However, in order to recover consequential damages, it is necessary that "[t]he parcel taken and the remainder area must (prior to the taking) have constituted a single physical unit." 4A Nichols, *supra* at § 14.02. Because a condominium consists of two property interests, each distinct from the other yet statutorily necessary and inseparable for the condominium's legal existence, there is posed a conceptual problem with regard to entitlement of consequential damages. We believe, nonetheless, that an individual unit owner's interest in the common elements and in his particular unit constitutes a single parcel of real property for purposes of condemnation actions.

Although this Court until now has had no occasion to examine in depth the question of when two separate property interests constitute the same physical unit in the eminent domain context, we note that our sister states, although not fashioning an invariable rule or principle, have focused their attention on three guidelines when considering this matter: 1) unity of ownership; 2) unity of use; and 3) unity of contiguity. See 29A C.J.S., *Eminent Domain* § 140 and cases cited therein (1965).

For there to be "unity of ownership" in two tracts of land some courts have required that the party claiming damages possess the same interest or estate in both parcels of property. *Glendenning v. Stahley,* 173 Ind. 674, 91 N.E. 234, 238 (1910); *Duggan v. State,* 214 Iowa 230, 242 N.W. 98, 99 (1932); *Tillman v. Lewisburg & N.R. Co.,* 133 Tenn. 554, 182 S.W. 597, 598 (1916); *Annot.,* 95 A.L.R. 2d 887, 893 (1964). We think this view too restrictive and accept the approach of those jurisdictions which require only that there be some

common property interest in both parcels of land. *Barnes v. North Carolina State Highway Commission,* 250 N.C. 378, 109 S.E.2d 219, 225 (1959); *Sauvageau v. Hjelle,* 213 N.W.2d 381, 388 (N.D. 1973); *Stockton v. Ellingwood,* 96 Cal. App. 708, 275 P. 228 (1929). The view we now embrace was succinctly stated by the North Carolina Supreme Court in *Barnes* as follows:

> The parcels claimed as a single tract must be owned by the same party or parties. It is not a requisite for unity of ownership that a party have the same quantity or quality of interest or estate in all parts of the tract. But where there are tenants in common, one or more of the tenants must own some interest and estate in the entire tract. [*Barnes v. North Carolina State Highway Commission, supra,* 109 S. E. 2d at 225.]

The condominium owner, therefore, possesses "unity of ownership" by way of his fee simple interest in his unit together with his undivided percentage interest in the common elements.

The next element that we examine is "unity of use". This unity has been considered by many courts the most important of the three guidelines; it has often been held to be the controlling and determining factor in deciding whether two parcels constitute one unit. 29A C.J.S., *supra* at § 140; *Barnes v. North Carolina State Highway Commission, supra,* 109 S.E. at 225. In this regard, Chief Judge Brune stated for this Court in *State Roads Comm. v. Smith,* 224 Md. 537, 546, 168 A.2d 705, 709-10 (1961):

> Most of the cases involving condemnation of a part of one of several adjacent or adjoining tracts belonging to a single owner where damages to remaining land have been claimed, have involved claims in respect to one or more of the other tracts, not merely in respect of the remaining portion of the tract from which a part has been taken. . . . The usual test applied in determining the allowability

of such damages is whether or not the several adjoining tracts have or have not been used as a unit.

Unity of use has been explained as follows:

[T]here must be such a connection, or relation of adaptation, convenience, and actual and permanent use between them, as to make the enjoyment of the parcel taken, reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used. [*Barnes v. North Carolina State Highway Commission, supra,* 109 S.E.2d 225.]

Applying this definition in the context of a condominium, we have no difficulty in finding that there exists "unity of use" between a condominium's common elements and the individual's particular unit. The full enjoyment of this type of proprietorship would not be possible unless the unit owner had a right to utilize the common elements, be they general or limited. The Maryland Condominium Act specifically supports this dependency by prohibiting a unit owner from transferring his unit without also transferring his interest in the common elements. § 11-107(d).

The final guideline accepted by most jurisdictions is "unity of contiguity". *City of Quincy v. V. E. Best Plumbing & Heating Supply Co.,* 117 Ill.2d 570, 162 N.E.2d 373, 375-76 (1959); *Ives v. Kansas Turnpike Authority,* 184 Kan. 134, 334 P.2d 399, 406-7 (1959); *Barnes v. North Carolina State Highway Commission, supra,* 109 S.E.2d at 225; *Darlington v. Pennsylvania R. Co.,* 278 Pa. 307, 123 A. 284, 286 (1924). Without discussing the many variations of this concept we think it patent that this element is ordinarily met by the unique relationship between a unit and its percentage interest in the common elements of a condominium regime.[7] A unit is merely a portion of space

---

7. In some extreme cases, a common element may be so far removed from the units in the condominium complex that there could be no contiguity

surrounded by and dependent upon the common elements, the two being required to coexist in order to meet the statutory requirement for the legal creation of a condominium.

On the basis of our conclusions above, we hold that a condominium unit and its respective share of the common elements, within the complex, constitute one parcel. Thus, an individual unit owner may recover consequential damages to his particular unit following an appropriation of the common elements as long as his unit, separate from the whole, is injured. As pointed out earlier, the Maryland Condominium Act supports this result by expressly providing in its section on eminent domain that "[e]ach unit owner shall be entitled to ... consequential damages to his unit." § 11-112 (c) (1).

With this determination, we now address the question of whether any award that may be made for the consequential damage to an individual unit is to be paid to the owner of that unit, rather than to the council of unit owners for the benefit of the collective group of property holders.[8] The eminent domain section of the Maryland Condominium Act, we reiterate, states that "[u]nless otherwise provided in the declaration or bylaws ... [e]ach unit owner shall be entitled to the entire award ... for consequential damages to his unit.[9] § 11-112 (c) (1). Under this statute, therefore, the injured unit owner is entitled to receive the award for any consequential loss to his unit unless the condominium documents specifically provide that the council of unit owners, or some other recipient, is to receive the award. We are, however, prohibited from completely resolving this issue in the

---

between the two. This situation, however, does not ordinarily exist in a condominium regime. It also does not exist in the present case because the portion of the common elements taken was a parking lot being utilized by the unit owners in conjunction with their respective units.

**8.** By this statement, however, we do not in any way imply that there can not be more than one individual unit similarly damaged by the taking of a portion of the common elements, entitling the respective unit owner to a consequential damage award.

**9.** In order to establish a condominium regime, a developer is required to file a declaration, bylaws and a condominium plat in the land records of the county where the property is located. § 11-102.

present case because the record, even though containing the original condominium declaration, fails to include in it the amendments to that document, if any, and the bylaws for the regime, either of which may control the outcome of this allocation problem.

There remains one further matter to be resolved in this case: namely, whether it was error to delete the names of the unit owners from the inquisition form submitted to the jury. While the trial judge was correct in directing that the unit owners and any mortgagees be added as parties to this condemnation suit, he subsequently erred when he failed to include their names on the inquisition form submitted to the jury. This follows from Maryland Rule U4 (b) which specifically provides: "A proceeding for condemnation shall be brought against all persons whose interest in the property is sought to be condemned, ... whether such persons are known or unknown, and such persons shall be designated as defendants." It is the general rule that:

> [W]hen the condemnation of land is effected by judicial decree, failure to designate in the petition (and to make a party respondent) the owner of any interest in the land taken whose title appears of record or is otherwise ascertainable on reasonable inquiry renders the proceedings ineffectual to transfer such interest to the condemnor. . . . When . . . the interests in the property are undivided, failure to designate and make parties of all the co-tenants invalidates the taking of the property so held or of any undivided interest therein. [6 Nichols, *The Law of Eminent Domain,* Sec. 26.1134 (3d ed. 1981)].

Thus, it is not enough that the inquisition named the Council of Unit Owners of Greenbriar Condominiums as the defendant. Although the council is a legal entity comprised of all unit owners with the power to govern the administration and maintenance of the property and, as acknowledged by the parties, is entitled in this case to receive the condemnation award for the general common elements actually taken

along with the consequential damages to the remaining general common element area in the regime, it does not have legal title to the collectively held property. There is nothing in the statute which allows the association, acting in a representative capacity for the unit owners, to transfer title to regime property. See § 11-109 of the Act for a delineation of the powers of the council of unit owners. It was error, therefore, not to include the names of the individual unit owners as defendants in the inquisition form. Md. Rule U (19); *Cf.,* Rules U (21) and (22).

> *Judgment of the Circuit Court for Prince George's County and the inquisition upon which it is based, vacated and case remanded for a new trial to be conducted in accord with this opinion.*
> *Costs to be paid by the City of Greenbelt.*