[787 NYS2d 120]

GLORIA S. MURPHY, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 103472.)

Second Department, December 27, 2004

APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General*, Albany (*Robert M. Goldfarb* and *Daniel Smirlock* of counsel), for appellant.

*Certilman, Balin Adler & Hyman, LLP*, East Meadow (*Dale Allinson* and *Natalya Rivkin* of counsel), for respondent.

**OPINION OF THE COURT**

S. MILLER, J.

This appeal presents novel issues of law arising from the condemnation of undeveloped real property, owned in common by the members of a residential condominium, and a claim by an individual condominium unit owner who allegedly sustained damages greater than those sustained by other unit owners as a result of the taking. The primary issue to be decided is whether such a unit owner may maintain a claim for consequential damages against the condemnor, separate and apart from the claim being prosecuted by the condominium on behalf of all unit owners. For the reasons that follow, we hold that such individual unit owner may not recover consequential damages distinct from those recoverable by the condominium as a whole.

I

The claimant, Gloria S. Murphy, is the owner of unit 8 in the condominium development known as the Fairways at North Hills (hereinafter Fairways). Fairways, which is situated north of the Long Island Expressway, west of its intersection with Shelter Rock Road, consists of 48 residential units (hereinafter homes) in 24 buildings, a swimming pool, tennis courts, roads, utilities, and other improvements built on approximately 24 acres in the Town of North Hempstead. As a condominium, Fairways is managed by its Board of Managers in accordance with its declaration and bylaws.

Pursuant to her deed, the claimant owns the interior of her home, and a 1/48th "undivided interest" in the common lands within Fairways; all of the real property within Fairways is owned by all unit owners (hereinafter home owners) in common. Each home owner has the exclusive right to occupy "irrevocably restricted common elements" which include, inter alia, the land within the footprint of their home, plus decks and

driveways. All homeowners possess the nonexclusive right to utilize the remaining common facilities.

## II

In or about March 2000, the defendant, State of New York, appropriated two parcels of undeveloped real property owned in common by the Fairways home owners for a road improvement project; no homes or other improvements were taken. One parcel consisted of 50,693 square feet, and a second parcel consisted of 9,852 square feet.

On behalf of its 48 owners, Fairways filed a notice of claim seeking direct damages in the sum of $2 million and severance and consequential damages in the sum of $4 million. Fairways and the State have reportedly entered into an advance payment agreement in partial resolution thereof. In addition, however, the claimant filed her own notice of claim seeking direct damages in the sum of $100,000, and severance and consequential damages in the sum of $400,000.

Insofar as relevant to this appeal, article XII of Fairways' bylaws is entitled "Condemnation" and provides:

> "In the event all or part of the common elements are taken in condemnation or eminent domain proceedings, the award from such proceedings shall be paid to the Insurance Trustee if the award is more than $40,000 and to the Board of Managers if the award is $40,000 or less, to be distributed in accordance with Section 3 of Article VII [governing reconstruction after a casualty] but in the following amounts:

> "(a) so much of the award as is applicable to unrestricted common elements, to the Home Owners pro rata according to the respective common interest appurtenant to the Homes owned by such Home Owners.

> "(b) So much of the award as is applicable to irrevocably restricted common elements to the Home Owner having general use of such common element.

> "In such eminent domain or condemnation proceeding the Board shall request that the award shall set forth the amount allocated to unrestricted common elements and to each irrevocably restricted common

element. In the event the award does not set forth such allocation then the question of such allocation shall be submitted to the arbitration in accordance with the Arbitration Statutes of the State of New York."

### III

By notice of motion dated July 9, 2001, the State moved, inter alia, to dismiss the claim pursuant to CPLR 3211 (a) (7) for failure to state a cause of action. In support of the motion, the State argued that article XII of Fairways' bylaws, by which all residents are bound, provided the exclusive mechanism for the recovery of just compensation for the taking of common property. The State asserted that pursuant to article XII, no individual home owner may receive an award for the condemnation of common elements (excluding irrevocably restricted footprint common elements). The State acknowledged Fairways' pending claim, and acknowledged that the claimant may be entitled to share in the damages recovered by the condominium. However, the State concluded, the claimant may not prosecute her own claim, and thus her claim should be dismissed.

The claimant opposed the motion, arguing that her claim was for her unique consequential damages. Due to the location of her unit vis-á-vis the taking and the widening of Shelter Rock Road, her unit was allegedly damaged in a manner "separate and distinct" from the damages sustained by other units; the claimant failed to elaborate on exactly *how* her situation was unique, but asserted that expert appraisal evidence would be adduced demonstrating that the fair market value of her home had been diminished as a result of the taking. Accordingly, she maintained that she stated a valid claim for consequential damages. The claimant further argued that the condemnation provision within article XII did not preclude her claim; article XII merely set forth the mechanism via which compensation recovered by Fairways for the taking of common property would be distributed among the home owners.

The claimant asserted that the State's position was unprecedented, and relied on the 1982 decision of the Maryland Court of Appeals in *Andrews v City of Greenbelt* (293 Md 69, 441 A2d 1064 [1982]), which dealt with the issue of a unit owner's standing to seek consequential damages. There, the claimant argued, the court recognized such a right as long as the unit owner suffered damages separate from those sustained by the condomin-

ium as a whole. The claimant suggested that the same result was warranted here, and thus the State's motion should be denied, and the matter should be permitted to proceed to trial.

The State replied, arguing that as a condition of purchasing a condominium unit, the claimant voluntarily surrendered certain of the property rights otherwise enjoyed by owners in fee simple; those rights are subordinated to promote the group interest, including the right to seek consequential damages as a result of a taking of common property. Also citing the *Andrews* case to support its position, the State argued that the Maryland Condominium Act permitted a claim for consequential damages by a home owner uniquely damaged by the taking of common property, whereas no such statutory authority existed in New York. Moreover, the *Andrews* court held that this right was subject to limitations set forth in the condominium declaration and bylaws (a signification limitation ignored by the claimant). Article XII of Fairways' bylaws, the State suggested, was just such a limiting provision. The State contended that the limitations in article XII provided a "common sense approach" barring which every homeowner would be involved in condemnation proceedings and all would have to agree to release their pro rata rights; a prospect the State predicted would be cumbersome and costly. For all of these reasons, the State concluded that only the board may seek condemnation damages, and thus the claimant lacks standing to advance her individual claim.

Upon the foregoing papers, the Court of Claims denied the State's motion. In pertinent part, the court held that in the absence of controlling authority, there was nothing in the Fairways bylaws expressly precluding the claimant from seeking consequential damages as a result of the taking of the common property. The State appeals. We reverse and grant the State's motion.

## IV

The narrow issue posed by this appeal is one of first impression at the appellate level in New York, and virtually every other state in the union. There appears to be no law on this topic, except the aforementioned holding of the Maryland Court of Appeals recognizing, under Maryland law, the right of a condominium unit owner to seek consequential damages as a result of the taking of common lands in the absence of a bylaw provision to the contrary. The resolution of this controversy, however, lies not within foreign case law, but within the declaration and

bylaws pursuant to which Fairways was created, and its business is conducted. We must decide whether the bylaws of this condominium association preclude the individual home owner from seeking consequential damages. The claimant seeks to vindicate an *individual* property right. But any analysis of the property rights of an owner of a condominium unit must take into consideration the fact of group ownership. The claimant owns her unit, and enjoys common rights to share the common elements with other home owners. The claimant has no right to the exclusive use of common elements (other than her irrevocably restricted footprint common elements), and thus her loss of any portion of the common elements may not give rise to an individual claim for consequential damages greater than, or different from, that sustained by her fellow home owners.

Neither the claimant nor Fairways questions the authority of the State to exercise its sovereign power (*see* 51 NY Jur 2d, Eminent Domain § 2) to take the subject property for public road improvements (*see Oak Hill Country Club v Town of Pittsford*, 264 NY 133 [1934]). Nor does the State contest its obligation, imposed by the US Constitution Fifth Amendment and NY Constitution, article I, § 7, to pay Fairways just compensation for the taking of Fairways' common property (*see* EDPL 101).

In addition to any direct damages for which the State may be found liable to Fairways for the value of the two parcels of common property actually taken, the State may owe Fairways consequential damages. Consequential damages, also known as severance damages, reflect the fact that in addition to the loss of value of the property actually taken, the condemnee's remaining property may suffer a diminution in value as a result of the loss of the condemned parcels (*see Town of Fallsburgh v Silverman*, 260 App Div 532 [1940], *affd* 286 NY 594 [1941]; *see generally* 8A Nichols, Eminent Domain § 16.02). The measure of severance damages is what the condemnee has lost, not what the condemnor has gained (*see* 8A Nichols, Eminent Domain § 16.02 [4]). Here, the remainder of the Fairways property may be worth less as a result of the condemnation of the two subject parcels (*see Monser v State of New York*, 96 AD2d 702 [1983]). The claimant, however, has sustained no loss of individual property rights as would require the State to pay her individual consequential damages.

In *Schoninger v Yardarm Beach Homeowners' Assn.* (134 AD2d 1 [1987]), this Court articulated some of the rules govern-

ing condominium ownership. It is now settled that the condominium form of ownership is manifested as a division of a single parcel of real property into individual units and common elements in which an owner holds title in fee to his individual unit as well as an *undivided* interest in the common elements of the parcel (*see Kaufman & Broad Homes of Long Is. v Albertson*, 73 Misc 2d 84 [1972]; *Susskind v 1136 Tenants Corp.*, 43 Misc 2d 588 [1964]; 15A Am Jur 2d, Condominiums and Cooperative Apartments § 1; 19A NY Jur 2d, Condominiums and Cooperative Apartments § 111). Once created, the administration of the condominium's affairs is governed principally by its bylaws, which are, in essence, an agreement among all of the individual unit owners as to the manner in which the condominium will operate, and which set forth the respective rights and obligations of unit owners, both with respect to their own units and the condominium's common elements (*Schoninger, supra* at 5-6).

> "Because of the manner in which ownership in a condominium is structured, the individual unit owner, in choosing to purchase the unit, must give up certain of the rights and privileges which traditionally attend fee ownership of real property and agree to subordinate them to the group's interest. As one court has commented, 'to .promote the health, happiness, and peace of mind of the majority of the unit owners . . . each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property' (*Hidden Harbour Estates v. Norman*, 309 So 2d 180, 182 [Fla]; *see also, Ryan v. Baptiste*, 565 SW2d 196 [Mo])" (*Schoninger, supra* at 6).

One of the basic principles underlying condemnation matters is that just compensation must be paid to the *owner* of the property that has been appropriated (*520 E. 81st St. Assoc. v State of New York*, 99 NY2d 43, 47 [2002]; *Matter of Town of Islip [Mascioli]*, 49 NY2d 354, 360 [1980]; 51 NY Jur 2d, Eminent Domain § 75). Pursuant to Fairways' declaration and bylaws, each of the 48 home owners who are members of Fairways owns a 1/48th share of the property within Fairways, including the two parcels of land appropriated herein. Bylaws article V provides "[t]he common elements shall remain undivided and no Home Owner shall bring any action for partition or division unless otherwise provided by law." Each owner's common "undivided interest in

the common elements . . . shall not be changed except with the consent of all of the Home Owners affected." This common ownership interest also determines the obligations of owners to bear the expenses of the condominium. As a general proposition, home owners may not exclude other home owners from the common elements, and may not put common elements to individual uses (*see* Real Property Law § 339-i [4]). In short, as a condition of purchasing a home in Fairways, individual ownership rights are subordinated to the promotion of the common good. It is in this vein that article XII explicitly recites the agreement of all home owners that in the event all or part of the common elements are taken in condemnation, the just compensation recovered as a result thereof shall be distributed to the home owners pro rata.

The claimant cites no authority for her contention that she may pursue an unrestricted individual recovery based upon her restricted, partial ownership interest in the common property of Fairways. The claimant is a 1/48th owner, and in accordance with the provisions of Fairways' declaration and bylaws, her rights and remedies vis-à-vis condemnation of common lands are limited to those available to her fellow owners. *Andrews v City of Greenbelt (supra)* is not to the contrary. That decision recognized that under Maryland law, each unit owner may seek consequential damages to his unit, "unless the condominium documents specifically provide that the council of unit owners, or some other recipient, is to receive the award" (*id.,* 293 Md at 80, 441 A2d at 1071). Fairways' bylaws expressly *do* provide for such alternate disposition; to the board or the insurance trustee depending upon the amount recovered. But the result is the same. The recovery inures to the benefit of all home owners in proportion to their ownership interest.

This result is supported by the holding of the Court of Appeals in an analogous condemnation matter. In *Matter of City of New York (Neponsit Prop. Owners' Assn., Inc.)* (269 NY 64 [1935]), the City condemned a parcel of waterfront land to create a public beach. The beach was owned by a homeowners' association, and all members thereof possessed easements pursuant to which they were permitted to use the beach; in effect, all member home owners enjoyed a private neighborhood beach club. The condemnee was awarded only nominal damages, and appealed. Though the primary issue involved the value of the easements extinguished by the condemnation, the Court also discussed the issue of apportionment, stating:

"When [the property owners' association] was formed, the property owners were expected to, and have looked to that organization as the medium through which enjoyment of their common right might be preserved equally for all. In such circumstances, the ownership of the fee and the right of beneficial enjoyment are not completely severed. For all practical purposes, both have become vested in the membership corporation formed by owners of dominant tenements for the purposes of taking title for their benefit. *The damage to the corporation by the taking of the land is the value of the use of that land by the corporation for the benefit of those accorded membership rights therein.* When the corporation is paid compensation for the damage sustained, the damages must be divided among those accorded membership rights in proportion to the size of their property, and the annual charges imposed upon the property by the grants through which the property was transferred." (*Id.* at 75 [emphasis supplied]; *see In re Condemnation by Commonwealth of Pa., Dept. of Transp., of Right-of-Way for State Route 0079, Section 290, A Ltd. Access Highway in Twp. of Cranberry*, 805 A2d 59, 66 n 9 [Pa 2002].)

The instant case is analogous. The land taken was owned by all, for the benefit of all owners. It may not serve as a basis for the claimant to pursue an independent claim.

Furthermore, we are mindful of the State's interest, as guardian of the public fisc, to minimize the costs borne by all taxpayers, in connection with condemnation matters. Reason dictates that dealing with one governing body, rather than multiple unit owners, leads to more expeditious and less costly acquisitions. In this case, where each home owner owns a $1/48$th interest in the common elements, were each owner to have an independent claim, the State would be required to negotiate with all 48 owners and to obtain releases from all in order to settle the compensation award. The State might well be required to obtain 48 separate appraisals. All of the above would obviously cause delay as well as a depletion of the public fisc. Moreover, if the individual owners were unable to settle their claims, 48 separate lawsuits might require court adjudication, causing further delay and a heavy burden on judicial resources. For all of the above reasons, a rational

interpretation of the Fairways bylaws favors the State's position—that the condominium should recover a collective award for all direct and consequential damages and distribute it in accordance with article XII of the bylaws. Moreover, condominium board members stand in a fiduciary capacity to the unit owners (*see Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills,* 193 AD2d 322 [1993]), so it is by no means clear that individual unit owners will suffer as a result of the recognition of the board as the sole representative in condemnation matters.

If the claimant has indeed been significantly injured disproportionately to other condominium owners, her remedy, if she has any, must lie in the discretion of the Fairways' board. Because the State moved to dismiss the claim, preanswer, the record sheds little light on the exact nature of the claimant's alleged damages. It may be inferred that her unit is now closer to the widened road than before the taking, but exactly how much closer and whether any actual damages have been sustained cannot be ascertained. While article XII compels equal distribution of any condemnation recovery, the board may be able to minimize or eliminate the claimant's damages by planting additional screening shrubbery, or by erecting sound barriers. Clearly the board may take whatever authorized action it may deem provident, cognizant of the actual damages sustained by the claimant and any other home owners who may have suffered a disproportionate burden for the sake of the community. But this only reinforces the conclusion that Fairways is comprised of individual home owners who have eschewed many individual rights by having entered into a community-living arrangement; they have cast their lot in together. Having done so, the claimant is bound by the rules of the community, including those of article XII.

Finally, although the claimant initially sought direct damages in the sum of $100,000 in addition to consequential damages, she has effectively abandoned that claim, as her arguments have focused exclusively upon the availability of consequential damages. Obviously, however (and again, except as to claims regarding condemned irrevocably restricted footprint common elements), the language of article XII applies with equal force to preclude any individual claim for direct damages.

Accordingly, the order is reversed, on the law, with costs, and the claim is dismissed.

RITTER, J.P., H. MILLER and CRANE, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the claim is dismissed.