[4 NYS3d 834]

RICHARD MISHAAN et al., Petitioners, v 1035 FIFTH AVENUE CORPORATION et al., Respondents.

Supreme Court, New York County, January 15, 2015

**APPEARANCES OF COUNSEL**

*Kasowitz Benson Torres Friedman LLP*, New York City, for petitioners.

*Cantor Epstein & Mazzola, LLP*, New York City, for respondents.

## OPINION OF THE COURT

NANCY M. BANNON, J.

### I. Introduction

In this proceeding pursuant to Business Corporation Law § 619, seeking, inter alia, a judgment declaring that petitioner Richard Mishaan was duly elected as a member of the board of directors of respondent 1035 Fifth Avenue Corporation on May 13, 2014, and enjoining the respondents from acting as a duly elected board, the petitioners move by order to show cause for that relief. For the reasons set forth below, the petitioners' application is granted in part.

### II. Background

Respondent 1035 Fifth Avenue Corporation (the co-op) owns a cooperative apartment building located at 1035 Fifth Avenue in Manhattan. The co-op is governed by a board of nine directors, each director serves a three-year term and the terms are staggered, such that each year the terms of three of the nine directors expire, and the election of new directors occurs each year in May at the annual shareholders' meeting.

Each petitioner is a unit owner and shareholder of the co-op. Petitioner Mishaan was a candidate for a director position in the May 13, 2014 board of directors election held at the co-op's annual shareholders' meeting and contends that he was duly elected. Petitioners Koppelman and Kunstadter are current members of the board of directors. Petitioners Abbey and Nelson are neither board members nor were candidates in the May 2014 election. The individual respondents also are each unit owners and shareholders, and respondents Rad, Green, Schmon, and Menschel are members of the board. Like Mishaan, respondents Atkinson and DiGiacomo were both candidates for director positions in the May 2014 election.

Article II, § 1 of the bylaws provides that there will be 9 to 11 directors, but the number is to be nine until increased by the board. The same section requires that directors "shall be elected at the annual meeting." The bylaws also provide for a nomination procedure, the order of business for the annual meeting, the notice requirements and the required quorum. In regard to tallying votes, article I, § 5 of the bylaws, entitled "Voting" provides that

> "[a]t each meeting of stockholders, each stockholder present in person or by proxy shall be entitled to

one vote for each share. . . . All proxies shall be in writing and shall be filed with the secretary at or previous to the time of the meeting . . . *All ballots and proxies shall be voted and counted at one and the same time*" (emphasis added).

Article I, § 6, entitled "Inspector of Elections," provides for the appointment of an inspector of elections and requires him or her to *"immediately"* file an oath and a certificate of the results of any vote taken at the meeting of shareholders with the secretary of the corporation (emphasis added). The bylaws are silent as to the miscounting or recounting of ballots. The bylaws in article II, § 6 further provide that the annual meeting of the board of directors shall be held immediately after the annual meeting of stockholders, without notice.

On May 13, 2014, the co-op held its annual shareholders' meeting, wherein the election of new directors was conducted. Five candidates, petitioners Mishaan and Koppelman and respondents Atkinson, DiGiacomo, and Menschel, ran for three available director positions. Respondents Atkinson and Menschel were both directors running for reelection. At the meeting, the board's assistant secretary and appointed inspector of election, Harry Smith, an employee of the building's managing agent, Gumley-Haft LLC, collected and counted the ballots and proxies. Thereupon, Smith announced the election of respondent Menschel and petitioners Mishaan and Koppelman to the board, and represented to those present that he would notify Mishaan and Koppelman of their election to the board, as they were not present at the annual meeting. The annual meeting was then concluded. However, Smith did not sign the required "Certificate of Results of Corporate Election."

Respondent Emil Rad, president of the board of directors, asked the board members to remain after the annual meeting concluded for a meeting of the board of directors, wherein the directors reappointed respondent Rad as board president and nonparty Wagner as vice-president and appointed respondent Green as treasurer. Mishaan and Koppelman were not present at the board meeting. Atkinson left after the annual meeting and was thus not present at the board meeting.

Sometime after the conclusion of the annual meeting, nonparty shareholder Martin Bell, a corporate attorney, notified Smith that he wished to review the proxies and requested that Smith save them for this purpose. Bell further notified the board president, respondent Rad, of his intention to inspect the

proxies. The next day, on May 14, 2014, during his review, Bell discovered that the proxy he had completed and timely sent to Smith on May 7, 2014 had not been counted, and notified Smith. Smith in turn consulted with the co-op's attorney, who advised him to count Bell's proxy before signing the certificate.

With Bell's proxy included, the previously announced election results changed. The signed "Certificate of Results of Corporate Election" reflected the election of respondent Menschel, petitioner Koppelman, and respondent Atkinson, and not petitioner Mishaan. Smith notified the board president of the change on May 15, 2014. Smith then sent an email to board members and a letter to all shareholders on May 16, 2014 informing them of the recount and changed election result. This was three days after the election. In his letter, Smith stated that he conducted a recount of the votes, as he does in all cases, especially when the vote count is close, and in the process discovered that he had failed to include one proxy in the count, which changed the results of the election.

On May 21, 2014, the board of directors met to discuss the discrepancy between the election results announced at the annual meeting on May 13, 2014 and those announced three days later on May 16, 2014. Present at the meeting were respondents Atkinson, Green, Menschel, Rad, and Schmon, petitioners Koppelman and Kunstadter, nonparty board members Wagner and Walther, as well as Smith and the co-op's attorney. According to the meeting minutes, Smith reported to the board that, as inspector, it was his decision to recount the votes because of the closeness of the election results. In the process of doing so, he discovered his error in inadvertently omitting a timely received proxy from the first count. Smith recounted his consultation with the co-op's attorney and subsequent actions. The board discussed several options to address the circumstances. Ultimately, the board voted in favor of increasing the size of the board by 2 to 11 members and to appoint petitioner Mishaan and respondent DiGiacomo to fill the seats. These newly-created seats would be for terms of one year each, rather than three as provided by the bylaws. The board decided to wait until the next meeting to ratify the appointment of officers in order to enable Mishaan and DiGiacomo to be present. Subsequently, DiGiacomo accepted the one-year board position, but Mishaan declined.

On June 10, 2014 the board met. According to the meeting minutes, Rad provided the board members with updates on

various current and future projects pertaining to the building, but no action was taken on these items by the board. Thereafter, the board voted to ratify the votes for officers that took place at the May 13, 2014 meeting.

By verified petition dated June 10, 2014, the petitioners commenced this proceeding pursuant to Business Corporation Law § 619, seeking injunctive relief, including a declaratory judgment, as well as money damages. Specifically, they seek an order declaring petitioner Mishaan to be a duly elected member of the board of directors of respondent 1035 Fifth Avenue Corporation, declaring that the respondent directors have no authority to act in the capacity as board members and that any action taken is null and void, awarding damages for breach of fiduciary duty by the individual respondents, and directing an inspection of the records of the May 13, 2014 election pursuant to Business Corporation Law § 624. On the same day, the petitioners moved by order to show cause for the same relief. The petitioners argue that the election on May 13, 2014 was valid and the respondents' subsequent recount of the ballots and proxies was improper, unauthorized and in violation of the bylaws. Because the board has conducted meetings since May 16, 2014, the petitioners contend that any actions taken in such meetings are without effect. The petitioners further contend that the respondents manipulated the election and that this constitutes a breach of their fiduciary duty to all shareholders.

Petitioners Mishaan, Nelson, and Kunstadter submitted affidavits in which they all contend that the run-up to the 2014 election was particularly contentious with much hostility being directed at Mishaan for espousing views inconsistent with the then board and its president, respondent Rad. In her affidavit, petitioner Kunstadter states that, leading up to the election, at the April 16, 2014 board interviews for the director positions, respondents Rad and Atkinson "conducted a hostile cross-examination" of petitioner Mishaan and at the May 8, 2014 "Meet the Candidates" event, respondent Menschel "angrily attacked" Mishaan. Kunstadter further states that she did not learn of the uncounted proxy or the changed result until May 16, 2014. When she asked Smith in an email whether he had shared such information with other board members before sending the letter to shareholders, Smith failed to respond.

On June 12, 2014, this court granted the petitioners a temporary restraining order which enjoined the respondents,

their agents, and anyone acting pursuant to their direction from holding any meeting as or on behalf of the board of directors, until further order of the court.

In their opposition papers, the respondents argue that the equities support inclusion of Bell's proxy because it was timely submitted and omitted from the count due to Smith's error. The respondents assert that the only actions the board has taken were to ratify the May 13, 2014 election of officers on June 10, 2014 and to expand the board by two members, each for a one-year term, rather than three, and offer the additional seats to petitioner Mishaan and respondent DiGiacomo on May 21, 2014. The respondents contend that the petitioners' breach of fiduciary duty claim is without merit in that the petitioners failed to allege any specific acts of misconduct by any individual respondent, as required. The respondents consented to permitting the petitioners to inspect the election records, and provided them on July 22, 2014.

To support their position, the respondents submitted the affidavit of Harry Smith who admits that he failed to count Bell's proxy because, even though it was timely sent, he neglected to print it or forward it to a colleague who was entering the information on a spreadsheet. In further support, the respondents submitted the affidavit of Bell, who describes himself an expert in reviewing proxies for legal sufficiency in corporate elections. Bell alleges that the election "was marred by vicious personal attacks against one of the [unidentified] candidates running for election" which was orchestrated by petitioner Nelson, and alludes to "public belittlement and humiliation" that occurred at the "Meet the Candidates" forum on May 8, 2014. Bell was present at the annual meeting when Smith announced that Menschel, Koppelman and Mishaan had been elected, and that Mishaan won over Atkinson by only 70 votes. Bell states that he decided to review the proxies on the day following the election because he "thought it a tragedy if [efforts to manipulate the election by defaming a fellow resident] were allowed to succeed."

The respondents also submitted the affidavit of respondent Rad in which he denies the respondents' claims that the board employed "autocratic governing tactics" and was in a "state of imbalance" and denies that he unfairly attacked Mishaan at any meeting. Rad denies any role in Smith's discovery of the uncounted proxy or the decision to recount the votes, but states that Smith informed him of the uncounted proxy and changed

result on May 15, 2014. After Smith informed the shareholders via his May 16, 2014 letter, shareholders reacted negatively to the "reversal of the election results" prompting Rad to convene a board meeting.

The respondents also submitted affidavits of Green, Menschel, Atkinson and Schmon, all of whom deny any involvement in the election process or to having expressed any opinion as to the validity of the outcome. They deny any knowledge of the contents of any ballot or proxy except their own. Green, Menschel, and Schmon each state that Rad informed them of the uncounted proxy and changed election result on May 15, 2014. In his affidavit, respondent DiGiacomo states that he heard Smith announce the election results at the annual meeting and left just after that, since he was not elected, but that he thereafter accepted an offer by the board for a one-year position and attendedthe June 10, 2014 board meeting.

In reply, the petitioners reiterate their arguments that the election result announced at the conclusion of the annual meeting should be confirmed, that actions taken by the board after May 16, 2014 should be declared null and void, and that they should prevail on their claim for breach of fiduciary duty. They add that if the court does not confirm the May 13, 2014 result, it should direct that a run-off election between petitioner Mishaan and respondent Atkinson should be held. In further support of their motion, the petitioners submit the affidavit of petitioner Nelson who denies engaging in any "campaign of dirty politics" leading up to the 2014 election or attempt to "belittle or humiliate" any candidate. He claims to have merely advocated for a more "proportionate representation" of the three building sections. The petitioners also submit a further affidavit of petitioner Kunstadter who states that she has lived in the building since 1965, has served on the board in the past, has attended most annual meetings during that time, and that in her experience "the announcement of the final results of board elections has been made at the annual meeting." An affidavit of shareholder Mon Ling Landgeger states that she gave her proxy to Smith before the election but discovered thereafter that it was not counted, and that she had voted for Mishaan. In her affidavit, shareholder Constance Silver states that she timely submitted her proxy to Smith but did not fill in the blank for "number of shares" since she was unsure of the number and that she voted for Mishaan. She never heard from Smith.

The matter was adjourned to August 6, 2014, at which time the parties executed a stipulation, which was so-ordered by this court, in which they agreed that, pending a decision on the motion, board meetings were permitted to resume, but could be attended only by the eight uncontested board members, respondents Rad, Green, Schmon, and Menschel, petitioners Koppelman and Kunstadter, and nonparties Walther and Wagner, so that the building would not be without governance.

## III. Discussion

### A. Declaratory Relief as to the Election

To warrant any interference by the court in the internal affairs of the corporation, a petitioner must make a clear showing of impropriety or action outside the scope of authority. (*See 40 W. 67th St. v Pullman*, 100 NY2d 147, 153-154 [2003]; *Wirth v Chambers-Greenwich Tenants Corp.*, 87 AD3d 470, 472 [1st Dept 2011]; *Matter of Cylich v Riverbay Corp.*, 74 AD3d 646, 647 [1st Dept 2010].) A corporation's scope of authority is defined by the Business Corporation Law and the corporate bylaws. Where a co-op's bylaws are clear, they must be followed. (*See Hamill v Elmwood Park Homeowners Assn., Inc.*, 96 AD3d 1009 [2d Dept 2012]; *Murphy v State of New York*, 14 AD3d 127 [2d Dept 2004].)

In regard to corporate elections, Business Corporation Law § 619 authorizes the court, upon a petition of any shareholder aggrieved by an election, to confirm an election, order a new election, or "take such other action as justice may require." (*See Matter of Lago v 87-10 51st Ave. Owners Corp.*, 301 AD2d 527, 528 [2d Dept 2003]; *Matter of Schmidt [Magnetic Head Corp.]*, 97 AD2d 244, 252 [2d Dept 1983].) "In considering whether to [confirm or] set aside an election, the court must determine whether improprieties produced a result different from what it otherwise 'would have been' or whether 'an inequitable result has been thereby produced[.]' [*Matter of*] *Goldfield Corp. v General Host Corp.*, 29 NY2d [264,] 271 [(1971)]." (*Matter of Schapira v Grunberg*, 12 Misc 3d 1195[A], 2006 NY Slip Op 51585[U], *4-5 [Sup Ct, Bronx County 2006]; *see Matter of Faraldo v Standardbred Owner's Assn.*, 63 AD2d 1010 [2d Dept 1978].) However, the election may be set aside only where it is "so clouded with doubt or tainted with questionable circumstances that the standards of fair dealing require" it. (*Matter of Faraldo v Standardbred Owner's Assn.* at 1010.)

For example, while notice is not an issue in this case, the failure to give proper notice in accordance with applicable statutes and the corporate bylaws would render an election invalid (*see Matter of Goldfield Corp. v General Host Corp.* at 269) while a meeting scheduled in compliance with the statutes and bylaws would not. (*See Matter of Ortiz v Garcia*, 102 AD3d 969 [2d Dept 2013].)

In regard to balloting, it has been held that, absent any bylaw or statute to the contrary, votes "cannot . . . be added after the polls have closed and the results formally announced." (*Smith v Orange & Rockland Utils.*, 162 Misc 2d 606, 610 [Sup Ct, Rockland County 1994].) In *Matter of Young v Jebbett* (213 App Div 774 [4th Dept 1925]), the Appellate Division observed that "[t]he fundamental rule is that all who are entitled to take part [in an election] shall be treated with fairness and good faith" and "[t]hat rule . . . permits the correction of a mere mistake." (*Id.* at 779.) However, the Court made clear that a mere mistake can be corrected only "when it can be made without prejudice to the rights of others, *and before the final vote is announced.*" (*Id.* [emphasis added].) Thus, it is the announcement of the election results at the annual meeting that is the point of finality after which no further votes can be added or counted.

Indeed, Business Corporation Law § 611 expressly states that "[n]o ballot, proxies or consents, nor any revocation thereof or changes thereto, shall be accepted by the inspectors after the closing of polls" and that the polls "shall close at the end of the meeting" and the inspector shall determine the result at the meeting. The statute's amendments, enacted after *Smith* and *Young* were decided, may have broadened an election inspector's powers, but the rule concerning the end of voting remained and was codified. Notably, Business Corporation Law § 611 does not require that a certificate be signed to finalize an election, but requires it only if requested at the meeting. While the respondent corporation is not the type covered by the statute (*see* Business Corporation Law § 611 [d]), the statute is undeniably instructive here.

Here, the co-op's bylaws establish a basic procedure for the nomination and election of the board. However, the bylaws are silent as to any procedure to be employed in the event of a miscount or of a recount of votes. (*See Matter of Schmidt.*) Nor do the bylaws provide that any particular law, code, or rule is to govern in matters not specifically covered by the bylaws

themselves. (*Compare Matter of Jackson v First Dist. Dental Socy.*, 240 AD2d 265 [1st Dept 1997] [rules of parliamentary procedure applied where bylaws silent].)

Nonetheless, a reading of the relevant bylaws, including sections 5 and 6 of article I, together and in their entirety reveals the intent concerning electoral procedure in this circumstance. As stated above, article I, § 5 mandates that "[a]ll ballots votes and proxies shall be voted and counted at one and the same time" and article I, § 6 requires the inspector to "immediately" file the results "of any vote taken at the meeting of shareholders" with the secretary. The bylaws further provide that the annual meeting of the board of directors, including the newly elected directors, is to be held immediately after the annual meeting of stockholders. Thus, the intent of this corporation's bylaws is to ensure that all votes, whether by in-person ballot or by proxy, are counted at a single point in time, and that that time be at the annual shareholders' meeting, and not some time after, and not twice.

This conclusion is supported by Kunstadter's allegation that, for 30 years, it was the common practice of the board to announce the final results of the election at the end of the annual meeting. Indeed, immediately following the announcement of the election results by Smith, the newly elected board convened for a board meeting. Logic dictates that had the board members not believed the results were final, they would not have met. Further, when an election is challenged, the court must consider whether the corporation's "common practice" was followed. (*See Young v Jebbett; Smith v Orange & Rockland Utils.*) Here it was not.

At the May 13, 2014 annual meeting, Smith counted all votes and announced the results in compliance with the bylaws. However, he did not then "immediately" sign the "Certificate of Results of Corporate Election" to finalize the election. This did not serve to keep the polls open or provide a basis to recount the votes. Nonetheless, in an apparent attempt to address a possible prior misstep by him in not including a proxy, Smith opened up the election, recounted the votes and certified a different result. This action was improper as it was contrary to the procedure set forth in the bylaws and outside the scope of his authority as inspector of election. Further, whether Smith conducted the recount based on Bell's discovery of his uncounted proxy or due to his own assessment that the results were close is of no moment.

The court notes that there is no dispute that the alleged improprieties here in excluding a proxy and then recounting the votes led to the different election result, one where Mishaan was not elected, since that is the gravamen of the petition, and that this is also a factor to be considered in an election dispute. (*See Matter of Goldfield Corp. v General Host Corp.*) However, despite the overlooked proxy, it cannot be said that the first tally was so "clouded with doubt or tainted with questionable circumstances that the standards of fair dealing require" it be set aside. (*Matter of Faraldo v Standardbred Owner's Assn.* at 1010.) Nor can it be said that the election of Mishaan rather than Atkinson is an "inequitable result." (*See Matter of Goldfield Corp. v General Host Corp.*)

Conversely, it can be said that the recount involved violations of several bylaws. Moreover, to confirm the recount based upon Smith's error in the first tally would be to open up any board election upon any subsequent discovery of a missed proxy, no matter when or how the discovery is made and would render void the results of an election which otherwise comported with the bylaws. Under the circumstances presented, including the mandates of the bylaws discussed above, setting aside the purported recount of the votes as improper is the more equitable result. (*See Matter of Goldfield Corp. v General Host Corp.* at 271.)

The court, therefore, concludes that Smith's recount of the votes to include Bell's proxy the day after the annual shareholders' meeting and his decision to change and certify the election results were without effect. Consequently, the election results announced at the conclusion of the annual meeting on May 13, 2014, which included petitioner Mishaan as a director in place of Atkinson, are confirmed and declared to be the election results. The petitioners' request for the alternative relief of a run-off election is therefore moot.

As noted above, in the event this court finds that Mishaan was duly elected, the petitioners also seek a declaration that the respondent directors are without authority to act in the capacity as board members and that any action taken is null and void. However, from June 12, 2014 to August 6, 2014, the board of directors was enjoined from holding any meeting as the board of directors. On August 6, 2014, the parties stipulated to allow the eight uncontested members of the board to function as the board of directors pending a decision on the matter. Accordingly, this portion of the petitioners' application

is necessarily limited to the period from May 16, 2014 to June 12, 2014.

It is well settled that "[t]he proper standard of judicial review of decisions by residential cooperative corporations is the business judgment rule." (*Silverstein v Westminster House Owners, Inc.*, 50 AD3d 257, 258 [1st Dept 2008].) This rule does not permit judicial inquiry into actions of a co-op board "taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." (*Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 537-538 [1990]; *see Matter of Cylich v Riverbay Corp.*, 74 AD3d 646, 647 [1st Dept 2010]; *Park Royal Owners, Inc. v Glasgow*, 19 AD3d 246 [1st Dept 2005].)

Here, the petitioners have not established that any actions taken by the board from May 16, 2014 to June 12, 2014, were not "taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." (*Matter of Levandusky v One Fifth Ave. Apt. Corp.* at 537-538.) Indeed, the only actions alleged by any party to have taken place during this time frame were the June 10, 2014 ratification of the results of the May 13, 2014 appointment of officers and the May 21, 2014 addition of two one-year-term board member positions, which were offered to petitioner Mishaan and respondent DiGiacomo. This is confirmed by a review of the meeting minutes. These actions appear to have been taken in good faith and cannot be said to have aggrieved the petitioners. Indeed, the ratification merely confirmed the officer positions decided on by the board on May 13, 2014. Moreover, the board's action in adding two one-year positions to the board, although perhaps contrary to the bylaws, appears to be an effort to resolve the dispute over the election results and provide an opportunity for all board candidates to participate.

For these and the reasons discussed below in regard to the breach of fiduciary duty claim, there is no basis to nullify any action taken by the board during the period May 16, 2014 to June 12, 2014.

### B. Summary Judgment on Breach of Fiduciary Duty Claim

By seeking "damages in an amount to be determined for breaches of fiduciary duty," the petitioners are, in effect, moving for summary judgment as to liability on that cause of action.

The proponent of a motion for summary judgment pursuant to CPLR 3212 must establish its entitlement to such relief as a

matter of law (*see Zuckerman v City of New York*, 49 NY2d 557 [1980]) by submitting proof in admissible form demonstrating the absence of triable issues of fact. (*See Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985].) If the movant fails to meet this burden and establish its claim or defense sufficiently to warrant a court's directing judgment in its favor as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Zuckerman v City of New York*; *O'Halloran v City of New York*, 78 AD3d 536 [1st Dept 2010]), the motion must be denied regardless of the sufficiency of the opposing papers. (*See Winegrad v New York Univ. Med. Ctr.*; *O'Halloran v City of New York*; *Giaquinto v Town of Hempstead*, 106 AD3d 1049 [2d Dept 2013].) This is because " '[s]ummary judgment is a drastic remedy, the procedural equivalent of a trial. It should not be granted where there is any doubt about the issue.' " (*Bronx-Lebanon Hosp. Ctr. v Mount Eden Ctr.*, 161 AD2d 480, 480 [1st Dept 1990], quoting *Nesbitt v Nimmich*, 34 AD2d 958, 959 [2d Dept 1970].) For the reasons set forth below, this portion of the petitioners' motion is denied.

Like any other corporate board, the board of a residential cooperative has a fiduciary duty to the shareholders, and where violations of individual officers' and board members' fiduciary duties are alleged, a breach of fiduciary duty claim may be maintained against such individuals. (*See Ramos v 24 Cincinatus Corp.*, 104 AD3d 619, 620 [1st Dept 2013]; *Fletcher v Dakota, Inc.*, 99 AD3d 43, 54 [1st Dept 2012]; *Ackerman v 305 E. 40th Owners Corp.*, 189 AD2d 665 [1st Dept 1993].) The party challenging the board's actions has the burden of demonstrating the breach (*see Silverstein v Westminster House Owners, Inc.* at 258) by showing "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." (*See Parekh v Cain*, 96 AD3d 812, 816 [2d Dept 2012], citing *Rut v Young Adult Inst., Inc.*, 74 AD3d 776, 777 [2d Dept 2010].) The petitioners fail to meet that burden as to any individual respondent. The petitioners only generally allege that the respondents manipulated the election process by making Mishaan the object of their hostility prior to the annual meeting and then refusing to acknowledge him as a board member after the election. Such allegations are insufficient to establish a breach of fiduciary duty claim. (*See DeRaffele v 210-220-230 Owners Corp.*, 33 AD3d 752 [2d Dept 2006]; *Solow v New N. Brokerage Facilities*, 255 AD2d 198 [1st Dept 1998].)

Moreover, the petitioners' claim that the board or any member manipulated the election results ignores the fact that it was Smith, an employee of the managing agent and not a board member, who omitted Bell's proxy in the first tally and later included it in an improper recount. Furthermore, each of the current board members, except the board president, respondent Rad, stated in their affidavits that they had no involvement in the conduct of the election and no knowledge of the uncounted proxy or the decision to recount the votes until notified by either Smith or Rad. The court notes that the papers submitted on the motion, including the affidavits of Mishaan, Nelson, and Kunstadter, support a conclusion that Mishaan may not have been a candidate favored by the then current board president, Rad, and/or other members of the board. However, any rigorous questioning of Mishaan by a board member that may have occurred at the candidates' forum or board interviews would not constitute misconduct that rises to the level of a breach of fiduciary duty. Further, there is no indication that the petitioners suffered any amount of monetary damages arising from the alleged conduct.

## C. Inspection of Election Records

Finally, as the respondents had no objection to and did provide the petitioners with the election records for inspection, that branch of the petitioners' application for inspection of such records pursuant to Business Corporation Law § 624 is denied as moot.

## IV. Conclusion

The branch of the petition which seeks a declaration that petitioner Richard Mishaan was duly elected as a member of the board of directors of respondent 1035 Fifth Avenue Corporation on May 13, 2014, is granted, and the remainder of the relief sought is denied, for the reasons stated herein.

Accordingly, it is, ordered that the branch of the petition which seeks a judgment declaring petitioner Richard Mishaan was duly elected as a member of the board of directors of respondent 1035 Fifth Avenue Corporation on May 13, 2014 is granted, and it is further, adjudged and declared that petitioner Richard Mishaan was duly elected as a member of the board of directors of respondent 1035 Fifth Avenue Corporation as of May 13, 2014, and it is further, ordered that the petition is otherwise denied.